[No. 55806–0.   En Banc.   July 27, 1989.]

MARIE N. ROBINSON, *Petitioner,* v. SAFEWAY STORES, INC., *Respondent.*

*Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* by *David W. Soukup* and *Charles R. Jones,* for petitioner.

*David C. Pearson* (of *Madden & Crockett*), for respondent.

PEARSON, J.—Petitioner, Marie N. Robinson, brought this negligence action for injuries she sustained at a Safeway grocery store located in Seattle, Washington. The jury returned a verdict in her favor in the amount of $9,278.31. The trial court, finding juror misconduct, ordered additur or, in the alternative, a new trial on the issue of damages. The Court of Appeals reversed, remanding the case to the trial court with instructions to reinstate the jury's original verdict. This court granted review.

At issue is whether the trial court abused its discretion in ordering additur or, in the alternative, a new trial based on juror misconduct and bias. We hold the trial court did not abuse its discretion in ordering a new trial; thus, we reverse the Court of Appeals in part and remand, ordering the modified reinstatement of the trial court's order.

On May 28, 1983, Marie Robinson was a patron at a Seattle Safeway grocery store. While reaching into a refrigeration unit, she was struck in the head and back by a small, metal, product display rack that fell when she brushed against it.

Following a verdict in her favor in the amount of $9,278.31, Robinson brought a motion for additur or, in the alternative, a new trial as to damages, claiming juror misconduct had resulted in an inadequate award of damages.

Upon review of both juror and counsel affidavits, the trial court entered its findings of fact on Robinson's motion, stating in part:

1. Plaintiff is a California resident. Because of her concern over the possible bias that a Washington jury might have with respect to a California resident each member of the prospective jury panel was asked by her counsel during voir dire examination whether or not the fact that the plaintiff and her witnesses were California residents would affect their ability to be fair. Specifically, [the juror who ultimately became the foreman] was asked whether there was anything about the fact that the plaintiff and her witnesses were from California which would create prejudice for him. He responded that there was not.

2. [The foreman of the jury] had indicated on his jury questionnaire that he had been a party to a lawsuit. He was specifically asked on voir dire examination by Mr. Charles Jones, "You were involved in a lawsuit–can you tell us what that was." [The foreman] responded that he [was] involved in a divorce case. [He also] stated that he had not been involved in any other lawsuit and specifically did not disclose that he had been the defendant in a lawsuit brought by a California resident against him for damages following an automobile accident in that state.

3. . . . During the course of the jury deliberation [the foreman] stated, "These Californians sue anyone they can get money from," that "Californians are sue happy," that Californians "Sue for anything" and "All these people from California, they sue all the time."

4. Following the jury verdict . . . one of the jury members had a conversation with [the jury foreman] in which she asked him about the comments he had made in the jury room regarding Californians suing. [The foreman] advised [the juror] that:

They sue for anything down there. They go for the big bucks too.

[The foreman] further stated that he believed it was Californians because:

The fast pace, I guess. I mean you don't see the suits in Washington like California. People down there sue for anything. Children sue their parents, parents sue their children, etc. I was sued for $500,000 because of a car accident.

[The foreman] further stated:

Well, the other person had the right–of–way and was speeding. His wife even sued me for $250,000 for loss of companionship while he was in the hospital. I was going to reenlist in the Marine Corp because I couldn't pay off $250,000 with a $200 a month job. The guy settled before court for $9,999 because he knew my insurance would pay for it.

5. [The foreman] was the defendant in a lawsuit brought by a California resident and was in fact prejudiced against California residents. [He] failed to disclose those facts to the plaintiff on appropriate voir dire examination. The plaintiff was thus denied a fair trial as to the issue of damages in this case.

6. The trial court was shocked by the low amount of damages awarded to the plaintiff in this case. The jury believed and the evidence established that the plaintiff was sufficiently disabled by the negligence of the defendant that she was unable to work for at least the balance of the year of 1983 and that she had wage loss and medical bills in excess of at least $7,700. . . . the jury awarded only $1,500 in general damages for pain and suffering . . .

7. The amount of the damages awarded by the jury in this case is so inadequate as to unmistakably indicate that the verdict must have been the result of passion or prejudice.

8. Substantial justice has not been done with regard to the amount of damages awarded to the plaintiff in this case.

9. Damages should be increased to the amount of $27,000 based on the evidence presented herein.

Thus, there are two grounds upon which the court based its order of new trial: the misconduct of a juror, as articulated in findings 1 through 5; and the inadequacy of the jury's verdict, as articulated in findings 6 through 9. Based on these findings, the trial court entered an order increasing the award of damages to $27,000 or, in the alternative, a new trial on the issue of damages.

# I
## JUROR MISCONDUCT

The Court of Appeals reversed, holding the record does not establish the jury foreman dishonestly answered the questions posed during voir dire. On this issue we reverse.

■ The trial court's findings of fact are subject to the substantial evidence test upon review by an appellate court:

Where the trial court has weighed the evidence our review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise.

(Citations omitted.) *Holland v. Boeing Co.,* 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978). We hold the trial court's finding that the foreman of the jury failed to disclose his prior involvement as a defendant in a suit brought by a California resident is supported by substantial evidence. The record further supports the court's finding that the foreman made numerous remarks regarding his perception of the "California litigation process", revealing the foreman's bias.

CR 59(a) provides:

> The verdict or other decision may be vacated and a new trial granted . . . for any one of the following causes materially affecting the substantial rights of such parties:
> (1) Irregularity in the proceedings of the court, jury or adverse party . . . by which such party was prevented from having a fair trial.
> (2) Misconduct of prevailing party or jury . . .

■ To the extent it is based upon questions of fact, the trial court's order granting a new trial must stand, absent an abuse of discretion:

> An order granting or denying a new trial will not be reversed except for an abuse of discretion; this principle being subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, no element of discretion is involved; and a much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying it.

*Coleman v. George,* 62 Wn.2d 840, 841, 384 P.2d 871 (1963).

■ As to the question of law, this court has held it is not an abuse of discretion to grant a new trial where a juror has provided false answers on voir dire:

> [W]hen there is strong evidence to the effect that a juror was biased *when he entered upon the case* and swore falsely on *voir dire,* concealing his bias, the trial court will not abuse its discretion in granting a motion for new trial. The misconduct consists of his deception of the court and counsel as to his incompetence as an impartial juror.

*Nelson v. Placanica,* 33 Wn.2d 523, 528–29, 206 P.2d 296 (1949).

Robinson contends she was deprived of her right to a trial by an impartial jury when the foreman failed to disclose his bias toward California residents, particularly his

perception of their role in the legal process. Robinson's argument is well taken. "The right to trial by jury includes the right to an unbiased and unprejudiced jury. A trial by a jury, one or more of whose members are biased or prejudiced, is not a constitutional trial." *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 265, 401 P.2d 982 (1965).

A juror's misrepresentation or failure to speak when called upon during voir dire regarding a material fact constitutes an irregularity affecting substantial rights of the parties. When the failure to respond in voir dire relates to a material question, the appropriate remedy is to grant a new trial. *Gordon v. Deer Park Sch. Dist. 414,* 71 Wn.2d 119, 122, 426 P.2d 824 (1967).

In *Smith v. Kent,* 11 Wn. App. 439, 523 P.2d 446 (1974), the plaintiff was injured by a rock that was thrown from a dump truck traveling in front of the plaintiff's automobile. During voir dire, one juror failed to reveal his experience as a truck driver when asked about previous employment. The court found this misrepresentation warranted the granting of a new trial. We quote generously from the Court of Appeals decision in that case, as it is dispositive of the issue at hand:

> The controlling question presented is whether a new trial should be granted because of a false answer given by [a] juror . . . to a material question during his voir dire examination. . . .
>
> . . . .
>     . . . The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. That misconduct may consist of a prospective juror's false answer to a material question that either (1) conceals or misrepresents his bias or prejudice, or (2) prevents the intelligent exercise by a litigant of his right to exercise a peremptory challenge or his right to challenge a juror for cause. These rights of challenge are important, substantial rights which serve to protect a litigant's constitutional right of trial by jury.
>     Voir dire examination enables a litigant to determine whether or not to exercise his statutory right to challenge a juror for cause or to exercise a peremptory challenge. . . . Accordingly, a litigant has the right to rely upon the sworn statements of the prospective juror made during voir dire examination. . . .

. . .

It is jury misconduct warranting a new trial for a juror to give a false answer on a material matter during voir dire examination that conceals information properly requested by a litigant to enable him to determine whether or not to excuse the prospective juror by peremptory challenge . . .

. . .

. . . [A] false answer on a material matter, whether it relates to the prospective juror's bias and prejudice or whether it relates to other material matters, lures the litigant into a false sense of security, discourages further inquiry, and deprives a litigant of a fair, intelligent and adequate opportunity to challenge the juror . . . The jury a litigant accepts on the basis of misleading information on which he has a right to rely is not the constitutional jury to which he is entitled. The only remedy that will obviate the harm done to his right of trial by jury is to grant a new trial.

*Smith v. Kent,* 11 Wn. App. at 441, 443–45.

█ Nevertheless, Safeway contends it is an invasion of the deliberative process to rely upon the affidavits of the jurors to subsequently challenge the verdict. However, such an argument fails to distinguish between relying upon a juror's affidavit for the purpose of establishing juror misconduct and relying upon a juror's affidavit to subsequently contest the thought processes involved in reaching a verdict. Only the former is permissible. *Hendrickson v. Konopaski,* 14 Wn. App. 390, 393, 541 P.2d 1001 (1975).

In *Allison v. Department of Labor & Indus., supra,* this court held it was proper to rely upon the affidavit of a juror to establish that another juror had provided false information on voir dire. Reliance upon the juror's affidavit is not violative of the deliberative process, as the information does not inhere in the jury's verdict. *Accord, Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962); *Byerly v. Madsen,* 41 Wn. App. 495, 499–500, 704 P.2d 1236, *review denied,* 104 Wn.2d 1021 (1985).

Thus, we reverse the Court of Appeals on this issue and affirm the trial court's ruling that Robinson was denied a fair trial as to damages as the result of juror bias and misconduct.

## II
### INADEQUACY OF THE VERDICT

In a de novo review of the record, the Court of Appeals reversed the trial court's order granting additur, holding the jury verdict was not so inadequate as to indicate passion or prejudice.

The trial court's authority for an award of additur is legislatively prescribed:

> If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict . . .

RCW 4.76.030. Upon review by an appellate court of an award of additur, the Legislature has additionally provided that

> there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the court of appeals or the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice.

RCW 4.76.030.

It is apparent from this provision the determinative factor in awarding additur is not merely the existence of jury passion or prejudice. For, if that were the case, the existence of juror misconduct and bias, as discussed above, would leave the trial court free to fashion its remedy according to its own sense of justice regardless of whether that misconduct affected the verdict. Such a practice would ignore our reverence for the verdict of the jury. Under the statutory scheme, to justify an award of additur, as distinguished from an award of a new trial under CR 59, the verdict *on its face* must be so inadequate as to unmistakably indicate the amount was the result of passion or prejudice.

In an instance where the jury verdict is within the range of credible evidence, the trial court has no discretion to find

passion or prejudice affected the verdict *for the purpose of ordering additur. James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971); *Hendrickson v. Konopaski, supra.*

In considering the extent of Robinson's injuries, the jury's award is within the range of credible evidence. The expert medical testimony of Dr. McDermott, if believed, established that Robinson's current symptoms and many of her medical bills were not related to the accident at issue. Thus, it cannot be said the jury's verdict is "so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of . . . prejudice." Therefore, the Court of Appeals did not err in reversing the trial court's order of additur.

Accordingly, the unpublished opinion of the Court of Appeals is reversed in part, and affirmed in part, and this case is remanded for a new trial as to damages.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.

Reconsideration denied October 4, 1989.