[No. 12265-4-III. Division Three. August 24, 1993.]

MILDRED HILL, *Appellant,* v. GTE DIRECTORIES SALES CORP., *Respondent.*

*Shawn D. Price-Sladich* and *Kagele Law Office,* for appellant.

*Robert F. Ewing, Patrick F. Delfino,* and *Huppin Ewing Anderson & Paul, P.S.,* for respondent.

SHIELDS, J.[*] — The jury found that GTE Directories Sales Corporation discriminated against Mildred Hill because of her sex and constructively discharged her. It awarded her $198 in stipulated medical expenses, $40,000 in lost income and $410,000 in noneconomic damages. The court denied GTE's motions for judgment n.o.v. and for a new trial, but granted its motion for remittitur. The court reduced the lost income award to $19,000 and the noneconomic damage award to $125,000. Ms. Hill appeals the reduction of the jury's award. GTE cross-appeals, assigning error to the denial of its motions for a new trial under CR 59(a), the exclusion of evidence, the giving of certain jury instructions, and the denial of its motion for judgment n.o.v. We affirm.

In July 1986 Ms. Hill applied with GTE for a job as a yellow page directory premise sales representative in the Spokane market area. After completing two interviews, she was informed GTE did not have that particular opening; however, she was offered a 3-month job selling advertising for a new travel magazine being produced by a GTE subsidiary and told she would then be permitted to transfer to

---

[*]Judge George T. Shields was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

directory sales if there were an opening. Ms. Hill took the job and sold advertising for the magazine from September 2 to December 13, 1986. For that job, she received 4 to 5 days of training in Seattle.

On December 22, 1986, Ms. Hill began working as a directory premise sales representative. She was the only woman holding that position in the Spokane division and the only Spokane premise sales representative who had worked on the travel magazine. Before beginning the job in directory sales, Ms. Hill received an additional 3½ to 4 days of training in Seattle, which focused on the differences between "creative" magazine advertising and "directional" yellow page advertising.

Ms. Hill was told during her initial interviews that all new sales representatives receive 5 weeks of formal training before starting their jobs. She was not sent to the GTE training facility in Dallas, though all of her male counterparts were. Trainees received their base pay during training, then a guaranteed pay cushion for their first 12 weeks (6 pay periods) on the job. Ms. Hill was not given that cushion.

Because of the way GTE averaged sales figures over three pay periods, Ms. Hill was never able to overcome her initial negative percentage to qualify for incentive pay. When she confronted her supervisor about the discrepancy between her pay and that of her co-workers, GTE gave her one-half of the incentive pay she would have received under the 12-week guaranty.

On the job, Ms. Hill struggled, asked questions and learned through experience. Her sales improved but she was repeatedly rated "poor" in territory control. She attributed her problems to lack of training and asked numerous times to be sent to Dallas for training. Finally, in June 1987 Ms. Hill was sent to Dallas for 1 week of training. While she was gone some of her accounts were given to other sales representatives. Immediately after the training period, she was named sales employee of the month for her performance in the Wenatchee area. By late October, however, she was having trouble managing her accounts and meeting her budget performances.

More of her accounts were pulled and given to other sales representatives, who benefited from any increases in sales but were able to pass back to her any losses on the accounts. Male representatives who were behind in the same territories did not have their accounts pulled.

In November and December 1987, and again in January 1988, Ms. Hill was warned she would have to increase her sales performance to 100 percent of budget and handle her assigned accounts in the time provided or face termination. However, during that period she was assigned an unusual number of high-risk accounts in Coeur d'Alene, Idaho, where a competing directory was taking a substantial amount of business away from GTE.

Ms. Hill again requested training, this time in a letter written to her superiors with a copy to be forwarded to Bob Brock, the Seattle director of Human Resources and Personnel. Mr. Brock later told Ms. Hill he never received the letter. On February 9, 1988, Ms. Hill was told she would not be sent to the training program and given another warning. Faced with sales losses of $3,000 and the knowledge she could not meet her budget performance, she quit the same day. She found another job within a week, then took a job in June with Minex which paid more than GTE had. Ms. Hill sued GTE for sex discrimination and wrongful discharge.

During jury selection jurors were told the defendant was represented by Bob Ewing of the firm Huppin, Ewing, Anderson and Paul, and asked if they knew Mr. Ewing or any members of his law firm. Prospective juror Claude Cox did not respond. He ultimately became jury foreman. After the verdict was entered, the court determined that Mr. Ewing's law partner Alan Rubens had represented Mr. Cox's corporate business partner in a breakup of their small corporation, directly adverse to Mr. Cox. Mr. Cox had dealt directly with Mr. Rubens by telephone and correspondence addressed to the firm. Mr. Cox later explained that he had contact with hundreds of attorneys in his job as Spokane County Risk Manager and he had not remembered his association with

Mr. Rubens, or Mr. Rubens' association with Mr. Ewing's law firm. He stated he had no animosity toward Mr. Rubens.

Before trial, counsel for Ms. Hill moved in limine to exclude evidence that she had had an affair with a married coworker during her employment with GTE. In response to a question by the court, defense counsel acknowledged he could not establish a direct link between the affair and substandard performance by Ms. Hill. The court found the evidence relevant, but determined its probative value was substantially outweighed by its prejudicial nature. The court granted the motion.

Before trial, counsel for Ms. Hill also indicated she was not pursuing her claim of constructive discharge, but would still seek damages covering the period after Ms. Hill quit. During trial, however, it became clear that counsel had actually meant Ms. Hill was abandoning the claim for wrongful discharge. Defense counsel objected to instructing the jury on constructive discharge and moved for a directed verdict on that issue, alleging there was insufficient evidence to submit the issue to the jury and that Ms. Hill had waived her claim. The court denied the motion, based upon its determination the evidence was sufficient to give the instruction and there was simply a misunderstanding as to what counsel for Ms. Hill meant.

Defense counsel also objected to instructing the jury on the shifting burden of production applicable to employment discrimination cases.

The jury returned a verdict for Ms. Hill determining her damages were $198 for medical expenses (stipulated by the parties), $40,000 for lost income and $410,000 for noneconomic damages. The court reduced the economic damages to $19,000 and noneconomic damages to $125,000 on GTE's motion, but denied its motions for judgment n.o.v. and a new trial under CR 59(a). Ms. Hill appeals the remittitur; GTE cross-appeals the judgment in favor of Ms. Hill and the denial of its posttrial motions. Ms. Hill requests attorney fees.

Ms. Hill's Appeal

Ms. Hill contends the court erred by substituting its opinion regarding appropriate damages for that of the jury. She argues the jury's awards are supported by substantial evidence and should be reinstated.

■ This court reviews the trial court's reduction of a jury verdict de novo, presuming the verdict was correct. *Snowhill v. Lieurance*, 72 Wn.2d 781, 783-85, 435 P.2d 624 (1967); *Hendrickson v. Konopaski*, 14 Wn. App. 390, 394-95, 541 P.2d 1001 (1975). A jury damage award should be overturned only in the most extraordinary circumstances. *See Miller v. Yates*, 67 Wn. App. 120, 124, 834 P.2d 36 (1992). Those circumstances are: (1) the award is outside the range of the evidence, (2) the jury was obviously motivated by passion or prejudice, or (3) the verdict amount is shocking to the court's conscience. RCW 4.76.030; *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 268-69, 840 P.2d 860 (1992); *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 654-55, 771 P.2d 711, 780 P.2d 260 (1989); *Bingaman v. Grays Harbor Comm'ty Hosp.*, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985).

The court reduced the economic damages in this case primarily for the first reason and the noneconomic damages primarily for the third reason, but also found both were within the second reason as "not rational, and could only have been the product of passion or prejudice, or an unlawful attempt to award punitive damages, or based on pure speculation." The court's reasons for reducing both awards are supported by the record.

Economic Damages. Clarence Barnes, an economic expert who testified for Ms. Hill, estimated she was deprived of $16,367 in direct income.[1] He used a co-worker's income as a baseline from which to estimate Ms. Hill's potential income. GTE challenged his calculations, but the jury was entitled to

---

[1]The figure represents $6,677, the differential between Ms. Hill's income and that of someone in the formal training program during the initial 12 weeks; plus $3,031, the amount Ms. Hill lost in 1987 because she was not properly trained; plus $6,659, the amount Ms. Hill lost between February 9 and May 31, 1988, as a result of her constructive discharge.

accept his opinion that $16,367 represents what her additional income would have been. He did not include any potential annual bonuses in his calculations.

Ms. Hill's co-worker, David McArthur, testified he earned a bonus for 1987 of between $1,000 and $1,400 — he did not recall the exact amount. The jury could reasonably have concluded from that evidence that Ms. Hill would have qualified for a similar bonus had she been trained and treated equally.

As for benefits, Mr. McArthur testified his GTE employee benefits included "[a] company car, vacation, paid holidays, health insurance, dental insurance, vision insurance, life insurance" plus retirement benefits and stock options. Ms. Hill testified she also received those GTE benefits, which ended when she quit. She then received similar benefits when she accepted the job with Minex in June. There is no other evidence in the record regarding benefits, nor any figures from which the jury could determine the amount of Ms. Hill's loss for the 4 months during which she did not have similar benefits.

The jury's $40,000 verdict was clearly outside the range of the evidence. The court did not err by reducing Ms. Hill's economic damages to $19,000.[2]

Noneconomic Damages. Ms. Hill testified she was constantly under heavy pressure to perform competitively, but felt inadequate and frustrated because she was insufficiently trained. She testified she consulted her doctor, who thought her problem was stress related. He referred her to another doctor, who prescribed Xanax to settle her nerves and calm her. She also testified she saw a psychologist twice in early 1988 before she quit.

Ms. Hill's testimony is sufficient to support some award of damages for emotional distress; she was not required to prove her distress was severe. *Nord v. Shoreline Sav. Ass'n,*

---

[2]The court did not find Mr. McArthur's testimony about his $1,000 to $1,400 bonus sufficient proof that Ms. Hill lost that amount, but it allowed a 10 percent inflation factor.

116 Wn.2d 477, 483-85, 805 P.2d 800 (1991). Nonetheless, the award must be in proportion to the injury suffered. Damages need not be proved with mathematical certainty, but must be supported by competent evidence. *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 530-31, 554 P.2d 1041 (1976). Damages must not be "flagrantly outrageous and extravagant". *See Bingaman*, at 837.

The trial court found the size of the award shocking to its conscience because "[t]here was no credible evidence of emotional distress, mental anguish, pain and suffering, or humiliation so sever [*sic*] as to justify an award of $410,000 for noneconomic damages." In light of the meager evidence and the jury's award of excessive economic damages (as discussed earlier), we agree the $410,000 award clearly indicates passion or prejudice, or an attempt to award punitive damages. The trial court was in the better position to make that determination and is to be accorded room for the exercise of its sound discretion. *Washburn*, at 279; *Bingaman*, at 835. The court's grant of remittitur is affirmed.

## GTE's Cross Appeal

GTE first contends the trial court should have granted a new trial pursuant to CR 59(a)(1) and (2) when it learned after the verdict that the presiding juror, Claude Cox, had not revealed a prior adversarial relationship with a law partner of GTE's defense counsel.

■ It is misconduct for a juror to fail to disclose material information when asked. *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 157-60, 776 P.2d 676 (1989); *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991), *review denied*, 118 Wn.2d 1021 (1992); *Smith v. Kent*, 11 Wn. App. 439, 523 P.2d 446, *review denied*, 84 Wn.2d 1007 (1974). Whether to grant a new trial for juror misconduct is within the trial court's discretion, to be reviewed only for abuse. *Tigano*, at 342; *see Robinson*, at 155.

The issue presented here is whether a new trial is warranted when the information withheld would not have sup-

ported a challenge for cause, but the defense could have used a peremptory challenge to remove the juror.

GTE relies on *Kent*, which holds a party is entitled to a new trial if a juror's material omission deprives a party of the opportunity to exercise a challenge, whether peremptory or for cause. *Kent*, at 443-44. However, 10 years after *Kent*, the United States Supreme Court set forth the rule under the federal constitution as follows:

> [T]o obtain a new trial in such a situation [material nondisclosure on voir dire], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984).

*State v. Rempel*, 53 Wn. App. 799, 801-04, 770 P.2d 1058 (1989), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990) followed *McDonough* and rejected the idea that a party is automatically entitled to a new trial on a showing that a juror failed to disclose material information on voir dire. *State v. Briggs*, 55 Wn. App. 44, 49-57, 776 P.2d 1347 (1989) discusses *Kent*, *Rempel* and *McDonough* at some length and notes at page 53:

> The *Kent* court's holding that a new trial is required when a juror's material nondisclosure deprives the plaintiff of the opportunity to intelligently exercise a challenge has been limited and redefined by [*McDonough*] and *Rempel* to require a new trial only if the withheld information would have provided a challenge for cause.

Although the Washington Supreme Court later quoted generously from *Kent* in *Robinson*, the juror there was actually biased; the court made no reference to *McDonough* or *Rempel*. Most recently *Tigano*, after reviewing article 1, section 21 of the Washington Constitution, relied on the *McDonough* rule as cited in *Briggs* (and *State v. Carlson*, 61 Wn. App. 865, 878, 812 P.2d 536 (1991)).

■ GTE's reliance on *Robinson* as authority for the proposition that the more relaxed peremptory standard of *Kent*

should be applied in this case is not persuasive; *Robinson* involved actual bias and the court did not consider the federal standard. GTE provides no reason for granting a civil litigant a new trial when a criminal defendant would not be entitled to a new trial under identical circumstances. Absent a showing that Mr. Cox could have been challenged for cause for actual bias or intentional misrepresentation, the failure to disclose his association with a member of defense counsel's law firm does not warrant a new trial. The court did not abuse its discretion.

GTE next contends the court abused its discretion by excluding evidence of Ms. Hill's affair with a co-worker. It argues the court based its ruling on an incorrect interpretation of "unfair prejudice",[3] and in so doing, deprived GTE of an opportunity to show that her substandard performance and stress may have been caused by factors unrelated to her employment.

█ It is clear from the record that the court did not misinterpret "unfair prejudice". The court considered the evidence relevant, but excluded it because defense counsel acknowledged he could not tie the affair into a period of reduced income or inadequate job performance. GTE has not established an abuse of discretion.

GTE also contends the court erred by submitting the issue of constructive discharge to the jury and by denying the motion for judgment n.o.v. on that issue. It argues Ms. Hill's attorney waived the constructive discharge claim, and GTE was entitled to rely on that waiver, dispensing with the need to disprove the claim. GTE also argues the court should not have submitted the issue to the jury because there was insufficient evidence of constructive discharge. Neither argument is persuasive.

---

[3]GTE refers to the following statement, made by the court while considering ER 403:

"I don't believe there's any question but what the testimony that's being offered is relevant. No question also it is prejudicial. If it wasn't prejudicial, I'm sure Counsel wouldn't want to introduce it. That's the purpose of the evidence is to establish a case."

The record supports the court's determination that counsel for Ms. Hill mistakenly indicated she was abandoning the claim of constructive discharge instead of the claim for wrongful discharge. The record also supports the court's finding that GTE "had the opportunity and did introduce all the evidence it would have introduced on those issues, and there is no evidence that the misunderstanding made any difference in defense trial tactics."

A court must instruct the jury on a party's position if there is substantial evidence to support it, *Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 866, 567 P.2d 218 (1977), and cannot grant a motion for judgment n.o.v. on the issue unless there is no competent evidence or reasonable inference sustaining the jury's verdict for the nonmoving party, *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991).

To establish her claim of constructive discharge, Ms. Hill was required to prove GTE deliberately made working conditions intolerable for her because she was a woman; a reasonable person in her position would be forced to quit; she did quit; and she suffered damage as a result of being forced to quit. *Bulaich v. AT&T Information Sys.*, 113 Wn.2d 254, 258-60, 778 P.2d 1031 (1989). Here, there was evidence supporting each of those elements. If believed, and it obviously was, Ms. Hill's evidence established that the Spokane GTE unit did not want a female premise sales representative, but was forced to take Ms. Hill. GTE then demanded she compete with her male counterparts but refused to give her equivalent training. GTE also started Ms. Hill without the usual pay cushion when she was new, so that she was never able to overcome her negative sales percentage. Finally, GTE gave Ms. Hill accounts it knew would not be renewed or increased and required her to meet an unattainable sales quota upon threat of termination. There was no error on the issue of constructive discharge.

GTE finally contends the court erred by instructing the jury on the shifting burden of production applicable in employment discrimination cases.[4] Both parties moved for a

---

[4]*See Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 431-32, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992), which adopted the shifting

directed verdict on the respective burdens of production; both motions were denied. GTE acknowledges instructions 7 and 8 correctly state the shifting burden, but asserts the burden of production is for the judge alone. By instructing the jury on the shifting burden, GTE argues the court gave the jury the opportunity to do that which the court had refused to do — essentially direct a verdict — and in the process created needless confusion. *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 522-26, 832 P.2d 537 (1992), *review granted*, 120 Wn.2d 1019 (1993).

■ GTE raises an excellent argument for not instructing the jury on the shifting burden of production.[5] As *Burnside* points out at pages 523-26, once all the evidence is in, issues of the plaintiff's prima facie case, the employer's burden to rebut with a legitimate nondiscriminatory reason for its actions, and the employee's burden of showing pretext are irrelevant; it creates needless confusion to instruct the jury on these burdens.

However, considering instructions 7 and 8 in context with the other instructions given in this case, we are not convinced they misled the jury. If the instructions were misleading, they were also harmless.

For erroneous instructions to require reversal, prejudice must be shown. *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529-30, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987). An error is not prejudicial unless it is likely the outcome would have been different without it. Here, without the shifting burden instructions, the outcome would have been different only if Ms. Hill had offered insufficient

---

burden enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

[5]*Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992) approved a shifting burden instruction, but the instruction was challenged on different grounds. *Burnside* held the court's refusal to give the instruction was not error. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 107 n.19, 827 P.2d 1070 (1992) reserved judgment on whether giving the instruction is error.

evidence to support her claims of sex discrimination and constructive discharge. *See Caruso.* GTE has not challenged the sufficiency of the evidence of sex discrimination and, as noted above, there is substantial evidence supporting the constructive discharge verdict.

In her reply brief, Ms. Hill devotes the final paragraph to a request for attorney fees pursuant to RCW 49.48.030 and RCW 49.60.030. RCW 49.48.030 does not apply and we deny the request for attorney fees under RCW 49.60.030 because Ms. Hill has not substantially prevailed on appeal. *See Blair v. WSU,* 108 Wn.2d 558, 571-72, 740 P.2d 1379 (1987).

The trial court's order is affirmed. A new trial will be held on the issue of damages unless Ms. Hill consents to the trial court's reduced damage award of $144,198, exclusive of costs and attorney fees. RCW 4.76.030.

THOMPSON, C.J., and SWEENEY, J., concur.