IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LEANNE LEVNO, an individual, | ) | No. 36735-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ADDUS HEALTHCARE, INC., an | ) | |
| Illinois corporation, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Leanne Levno appeals an order of summary judgment,

dismissing her claims of wrongful employment termination against Addus Healthcare,

Inc. We affirm.

FACTS

Ms. Levno worked at Addus Healthcare as a home caregiver for vulnerable adults.

From 2012 to 2016, Ms. Levno provided caregiver services for one client, L.J.D. On

August 29, 2016, Ms. Levno filed an incident report with Adult Protective Services

(APS), alleging neglect and abuse of L.J.D. by other Addus employees. She followed up

with a report to Addus the next day.

No. 36735-5-III
*Levno v. Addus Healthcare, Inc.*

Shortly after the APS report, Ms. Levno was contacted by L.J.D.'s husband. He advised he received a letter from Addus dated September 2, 2016, indicating Ms. Levno had been removed from L.J.D.'s care. The letter stated:

> Please accept this as formal notice that Addus HomeCare will no longer be able to provide you with services per our voicemail. We normally give two week[s'] notice before stopping services which means the last day of services will be 9/16/16. Unfortunately, we will no longer be able to send Leanne Levno to care for you, which means that we may not have enough staff to guarantee full coverage until the 16th. Therefore, it is our hope that you can work with your case manager . . . to select another provider before the 16th.

Clerk's Papers (CP) at 413.

Addus did not provide Ms. Levno a copy of the aforementioned letter. However, Ms. Levno was informed that she could not return to work for L.J.D. until after meeting with her supervisors.

The supervisor meeting took place on September 8, 2016. At that time, Ms. Levno was informed she had been removed from L.J.D.'s case for performance reasons, including failure to maintain professional boundaries. Ms. Levno was provided various paperwork, including Addus's written policy on maintaining client boundaries and a document entitled "Disciplinary Warning Notice and Action Taken." *Id*. at 47 (some capitalization omitted).

2

No. 36735-5-III
*Levno v. Addus Healthcare, Inc.*

The disciplinary warning document indicated Ms. Levno was provided a "written warning" for "disregard of known rule" and "insubordination." *Id*. Included was the following explanation:

> Not following the plan of care for client, not reporting client changes in condition and client needs to the supervisor. Having other HCA report to her instead of supervisor if they have questions or concerns about client crossing professional boundaries, providing care for people other than the client, preforming nursing tasks without delegation.

*Id*. The bottom of the disciplinary warning bears the following statement: "IMMEDIATE SATISFACTORY IMPROVEMENT MUST BE SHOWN OR FURTHER DISCIPLINARY ACTION WILL BE TAKEN, INCLUDING POSSIBLE SUSPENSION FROM DUTY OR DISCHARGE." *Id*. Below this further action options are listed, including "Warned Verbally, "Warning in Writing," "Suspended," and "Discharged." *Id*. None of the boxes next to these action items are marked. In the comments section, Ms. Levno wrote, "I don't agree—I refuse to sign." *Id*. at 47, 348.

Addus maintains that after September 8, efforts were made to contact Ms. Levno and offer her new assignments. However, Ms. Levno never agreed to alternate arrangements. Ms. Levno denies that she was ever contacted after the meeting on September 8.

In January 2017, Addus claims it terminated Ms. Levno's employment due to abandonment.

PROCEDURE

Ms. Levno sued Addus Healthcare for wrongful termination. The crux of her complaint was that she had been terminated on September 8, 2016, in retaliation for the APS report and in violation of public policy. Ms. Levno's termination claim was specific to September 8 and she did not allege any other form of adverse employment action.

Addus moved for summary judgment, claiming Ms. Levno lacked proof of termination. Ms. Levno filed two responsive declarations. One was from L.J.D.'s daughter, H.D. It stated an unnamed "Addus supervisor" called H.D. in late August 2016 and stated that Addus had terminated Ms. Levno. *Id*. at 294. The second declaration was from Ms. Levno. Ms. Levno's declaration stated she had been terminated on September 8 and that Addus's terminology to the contrary was "irrelevant because [she] was given zero hours, zero clients, and zero income." *Id*. at 289. Ms. Levno's declaration did not state she had been orally terminated during the September 8 meeting.

Addus filed excerpts of Ms. Levno's deposition in support of its summary judgment motion. Throughout the deposition, Ms. Levno repeatedly equated being removed from L.J.D.'s case with termination. For example:

4

Q, So on September 8th, you were taken off of the [L.J.D.] assignment?
A. I was wrongfully terminated, yes.

*Id*. at 79, 347.

Q. Were you taken off of the [L.J.D.] assignment on September 8th?
    [Objection to form]
A. Yes, I was wrongfully terminated on—
Q. [By counsel for Addus] I didn't ask you whether or not you were terminated. I just asked whether or not you were taken off of the [L.J.D.] assignment.
    Were you taken off of the [L.J.D.] assignment?
A. I was taken off the [L.J.D.] assignment and wrongfully terminated.
. . . .
Q. Respectfully, Ms. Levno, I understand that you have your beliefs. I'm not asking you that.
    All I'm asking you is whether or not when you sat down with your supervisor, were you told that you were being taken off of the [L.J.D.] assignment for crossing professional boundaries.
    [Objection to form]
A. I was told I was being taken off the client. But it was a wrongful termination. I was wrongfully terminated.

*Id*. at 79-81, 347-48.

In discussing the paperwork generated by Addus, Ms. Levno claimed the disciplinary notice provided to her during the September 8 meeting "explicitly" stated she was being terminated and the September 2 letter to L.J.D.'s husband "specifically" stated she was terminated.[1] *Id*. at 84-85, 320-21, 352. Apparently recognizing that neither the disciplinary notice nor the September 2 letter mention termination, counsel for Addus

---

[1] In the deposition, the disciplinary warning notice was referred to as Exhibit 9.

asked Ms. Levno if she understood the difference between termination and reassignment. She answered, "[y]es . . . But I was wrongfully terminated. . . . And they did not offer me any employment." *Id.* at 86, 322, 353.

The trial court issued a letter ruling, concluding Ms. Levno failed to meet her burden of establishing material issues of fact as to termination. The court refused to consider H.D.'s declaration as hearsay attributed to an unidentified speaker. The court was also unimpressed with Ms. Levno's deposition testimony because it was purely conclusory. Noting that Ms. Levno had not alleged constructive discharge, the trial court granted summary judgment to Addus on the basis that Ms. Levno lacked admissible evidence indicating she had been terminated on September 8, 2016.

The day prior to presentment, Ms. Levno filed a motion for reconsideration. In her motion, Ms. Levno again relied on the declaration of H.D. For the first time, Levno alleged constructive discharge. The trial court denied Ms. Levno's motion. Noting that Ms. Levno's response to Addus's motion for summary judgment had been untimely, the court refused to consider her postdecision claim of constructive discharge.

Ms. Levno appeals.

No. 36735-5-III
*Levno v. Addus Healthcare, Inc.*

ANALYSIS

A case is appropriate for resolution on summary judgment if competent evidence

shows no genuine issue of material fact for trial. CR 56. "We review summary judgment

orders de novo," with the evidence and all reasonable inferences construed in the "light

most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d

1080 (2015). The party moving for summary judgment bears the initial burden of

establishing the absence of an issue of material fact. *Young v. Key Pharmaceuticals, Inc.*,

112 Wn.2d 216, 225, 770 P.2d 182 (1989). If this showing is met, then the burden "shifts

to the party with the burden of proof at trial, the plaintiff." *Id.*

The contested material fact relevant to Ms. Levno's retaliation and public policy

claims is termination. Addus asserts that Ms. Levno was not terminated; she instead

abandoned her job. Ms. Levno contends she was terminated during the September 8

meeting with her supervisors.

Contrary to Ms. Levno's deposition statements, the parties now agree that none of

the paperwork generated by Addus at the time of the September 8 meeting specified

termination. Instead, Ms. Levno claims she was orally terminated.[2] Although Ms. Levno

---

[2] Ms. Levno's reply brief acknowledges this core issue, stating "the disputed fact of whether [management] orally terminated Levno on September 8, 2016 . . . is the crux of the case at bar." Reply Br. of Appellant at 11.

did not mention oral termination in her declaration filed in response to Addus's motion

for summary judgment, Ms. Levno points to excerpts of her deposition testimony where

she discusses oral termination:

- When asked if she had received a termination letter from Addus, Ms. Levno stated, "No. But it was all right in here that—and during the meeting, Dawn [Ms. Levno's manager] told me that I was being terminated from—from Addus." CP at 83, 351.

- Regarding what happened during the September 8 meeting, Ms. Levno stated, "I was told that I was being terminated." *Id*. at 352. In immediate follow-up, Ms. Levno was asked if she had any documentation to reflect termination from employment. She referenced the disciplinary notice and the letter to L.J.D.'s husband.

- When asked where Addus's paperwork stated Ms. Levno was being fired, Ms. Levno stated, "Right in here. It's not following the care plan, not—right here are these comments. Right here. And what was said between Dawn [and two other managers]. They all three—the verbal." *Id*. at 84, 352.

- In describing her September 8 conversation with supervisors, Ms. Levno stated, "They told me I was wrongfully terminated from my job." *Id.* at 351. When asked to clarify that "[i]n fact, they specifically told you that you were wrongfully terminated from your job?" Ms. Levno answered, "[y]es, they did." *Id.*

Viewing the matter de novo, we agree with the trial judge that Ms. Levno's claims of oral termination are too conclusory to overcome summary judgment. Throughout her deposition, Ms. Levno explicitly and repeatedly refused to disentangle her opinion about what happened to her ("wrongful termination") from what was actually stated (she was removed from L.J.D.'s care). *See, e.g.*, *id.* at 81, 348 ("I was told I was being taken off the client. But it was a wrongful termination."). *Id.* By so doing, Ms. Levno stripped her use of the word "termination" from any probative, factual value. No reasonable reading of Ms. Levno's deposition suggests that she was told words to the effect of "you are terminated" or "you are fired." Rather, it is abundantly clear that Ms. Levno was told she was being removed from Ms. Levno's case and she subjectively equated that communication to being told she was wrongfully terminated from her job. Given this circumstance, Ms. Levno's deposition fails to raise a material issue of fact as to whether termination took place on September 8, 2016.

Ms. Levno claims that H.D.'s declaration should be considered to support her claim of termination. However, we agree with the trial court; the letter is inadmissible. H.D.'s declaration fails to specify who it was that claimed to be an Addus supervisor. Without specific attribution, the out-of-court statement cannot qualify as an admission of a party opponent. ER 801(d)(2). Nor can it qualify for admission as state of mind evidence. ER 803(a)(3). After all, not just anyone's state of mind is relevant. Only the state of mind of a person authorized to terminate Ms. Levno would be relevant to proving Ms. Levno was, in fact, terminated. H.D.'s declaration was properly excluded as inadmissible hearsay. ER 801(c), 802.

The last argument raised by Ms. Levno is that the trial court failed to consider her claim of constructive discharge. The problem here is that Ms. Levno did not argue constructive discharge until her motion for reconsideration. Unlike a summary judgment motion, a motion for reconsideration is reviewed for abuse of discretion. *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005). Regardless of whether Ms. Levno's complaint was sufficient to allege a claim of constructive discharge, she did not argue facts in support of constructive discharge until her motion for reconsideration. Constructive discharge involves a legal theory distinct from express discharge. *See Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 143, 856 P.2d 746 (1993). As such, it

was not properly argued for the first time on reconsideration. *See Wilcox*, 130 Wn. App. at 241. In her motion for reconsideration, Ms. Levno failed to explain why she had not previously argued constructive discharge. Particularly given the tardiness of Ms. Levno's summary judgment briefing, the trial court did not abuse its discretion in refusing to excuse Ms. Levno's belated theory of relief.

## CONCLUSION

The trial court's order on summary judgment is affirmed. Addus's request for attorney fees is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

I CONCUR:

_____
Korsmo, J.

No. 36735-5-III

FEARING, J. (dissenting) — Both direct and circumstantial evidence create an issue of fact as to whether Addus Healthcare, Inc. fired caregiver Leanne Levno for reporting abuse of a vulnerable adult client of Addus Healthcare to Adult Protective Services (APS). Therefore, I dissent.

Since the trial court dismissed Leanne Levno's lawsuit on summary judgment, I draw the facts from affidavit and deposition testimony. I consider the facts in a light favorable to Levno.

In 2007, plaintiff Leanne Levno gained employment with defendant Addus Healthcare as a home caregiver. Levno cared for vulnerable adults, who suffered from physical or mental illnesses. As a mandated reporter, Levno possessed a duty to report her reasonable belief of abuse or neglect of a client to APS. RCW 74.34.020 (14); .035(1).

From 2012 to 2016, Leanne Levno cared for one critical care client, Lois Davenport, a pseudonym, who could not attend to her basic needs. Levno cared for Davenport from Sunday to Thursday afternoon, and another caregiver, Kelly Crawford, cared for Davenport Thursday to Saturday. Substitute caregivers assisted with care on the one Sunday a month when Levno did not work. Levno grew concerned about the

adequacy of care provided by one or more substitute caregivers. Substitute caregivers, at the request of Lois Davenport's husband, often called Levno and asked questions about Davenport's care.

According to Leanne Levno, she reported to Addus Healthcare's ever changing supervisors neglect and abuse of Lois Davenport by other caregivers ten to fifteen times between 2012 and 2016. She presented the reports by direct conversations, timesheets, phone calls, and letters.

One weekend in November 2013, Leanne Levno reported neglect of Lois Davenport to Sandra Kester, an employee at Addus Healthcare's Illinois corporate office. Levno called the corporate office because the local Addus office closes on the weekends and all calls are forwarded to the corporate office. During this call, Levno expressed her concern for Davenport's lack of care on the weekends because of bedsores suffered by Davenport. Levno added that Lois Davenport's husband complained that some substitute Addus Healthcare caregivers failed to show at the couple's home, leaving Davenport stranded in soiled diapers for hours.

As a result of her concern for abuse of Lois Davenport by substitute care, Leanne Levno began to provide some care for Davenport on the weekends. Levno worked as much as eighty hours per week in order to provide the care. On one occasion, Levno reported extra work to Addus Healthcare because of a failure of a substitute to appear, but Addus Healthcare failed to pay her for the time.

2

On Sunday, February 15, 2015, Lois Davenport's daughter complained to Leanne Levno of the failure of a caregiver to appear at Davenport's residence to care for Davenport. Because of her belief that Addus Healthcare supervisors ignored her reports of neglect, Levno decided she needed to take additional steps. Levno then reported the history of neglect and abuse of Davenport to Ann Moreland at APS. Levno elaborated that the dire state of Davenport's condition required her to work extra hours. Levno did not inform her supervisor that she reported Addus Healthcare to APS.

After the February 2015 report to APS, Leanne Levno's supervisor, Mike, informed her to report any neglect or abuse of Lois Davenport to him before reporting the lack of care to APS. Mike would be the one to decide whether a report should be forwarded to APS. Mike also warned Levno that Addus Healthcare would fire her if she did not obey his instruction.

On August 19, 2016, Addus Healthcare assigned Dawn Taylor to be Leanne Levno's supervisor. On August 29, 2016, Levno filed an incident report with APS reporting that Lois Davenport again suffered neglect.

On September 1, 2016, at 4:00 p.m., Dawn Taylor telephoned Leanne Levno and informed Levno that she could not return without first speaking with Taylor. Taylor scheduled a meeting with Levno for the following day. Levno replied that, as a union member, she possessed the right to union representation at a meeting and, due to the late notice, she could not promise to be present the next day. Taylor and Levno postponed the

meeting and met on September 8. After September 1, but on an unspecified day, Leanne

Levno received a phone call from Lois Davenport's husband. He told Levno that he

received a September 2 letter from Addus Healthcare that declared that Levno would no

longer care for Davenport. Levno had been unaware that Addus Healthcare had removed

her from the care of Davenport. The letter read:

> Please accept this as formal notice that Addus HomeCare will no longer be able to provide you with services per our voicemail. We normally give two week's [sic] notice before stopping services which means the last day of services will be 9/16/16. Unfortunately, we will no longer be able to send Leanne Levno to care for you, which means that we may not have enough staff to guarantee full coverage until the 16th. Therefore, it is our hope that you can work with your case manager (Patricia Breidt at Elder Services) to select another provider before the 16th.

Clerk's Papers (CP) at 413. The husband wanted an explanation for the removal of

Levno from his wife's care. In her deposition, Leanne Levno testified to her belief that

the September 2 letter to the Davenports terminated her from employment.

At the September 8 meeting, Leanne Levno met with Dawn Taylor, Susie Young,

and another supervisor, Alice. Levno's supervisors told her that Addus Healthcare was

removing her from the care of Lois Davenport because Levno failed to follow the care

plan for Davenport, failed to report changes in the client's condition, failed to report the

client needs to her supervisor, told other healthcare aides to report to her rather than their

supervisor, crossed professional boundaries, provided health care for one other than her

client, and performed nursing tasks without delegation from a nurse. Susie Young

4

provided Levno with a written disciplinary warning that listed the causes for the reassignment and listed insubordination and disregard of a known rule as the basis of the warning. Below the listed violations, the form language declared:

> IMMEDIATE SATISFACTORY IMPROVEMENT MUST BE SHOWN OR FURTHER DISCIPLINARY ACTION WILL BE TAKEN, INCLUDING POSSIBLE SUSPENSION FROM DUTY OR DISCHARGE.

CP at 47. Levno refused to sign the disciplinary warning since she denied the truthfulness of the charges. Leanne Levno considered the disciplinary warning and removal from the care of Lois Davenport as retaliation.

During her deposition, Leanne Levno impliedly conceded that she measured Lois Davenport's blood sugar level and added medications to her regimen without Addus Healthcare's approval. Nevertheless, Levno insisted on the need to perform these acts because of the lack of resources provided by Addus Healthcare. Leanne Levno agreed that other caregivers called her and asked questions about the care for Lois Davenport because of the unavailability of Addus Healthcare supervisors, but Levno denied that any caregiver "reported" to her. CP at 350.

In her deposition, Leanne Levno repeatedly testified, even when not asked, that, by the end of the September 8 meeting, Addus Healthcare wrongfully terminated her on September 8, 2016, for reporting neglect of Lois Davenport to APS. For example, Levno averred:

> Q. . . . It says that you're receiving a written warning, correct?
> A. Yes. But that—this is not correct. I was wrongfully terminated, and it's also due to the retaliation of what happened on August 29th, and they had to come back with something to come back on me. And this is what they came back up and not following the care plan.
> This has nothing to do—it's all because of retaliation.
> And so why did they take my client away from me?

CP at 350.

During the deposition of Leanne Levno, Addus Healthcare's counsel repeatedly asked what Addus Healthcare representatives told her during the September 8 meeting in order to discover the basis on which Levno claimed termination from employment. Levno responded:

> A. I was told I was being taken off the client. But it was a wrongful termination. I was wrongfully terminated.

CP at 348.

Leanne Levno agreed that she never received a letter of termination from employment from Addus Healthcare. Rather, she declared during her deposition that her supervisor verbally terminated her: "Dawn told me that I was being terminated from—from Addus." CP at 83, 351. Levno also averred that Alice and Susie, the other managers at the September 8 meeting, also told her she was fired.

According to Dawn Taylor, she and other supervisors at Addus Healthcare attempted to contact Levno several times after September 8 to offer assignments as a substitute home health giver or as a permanent home health caregiver for other clients.

Leanne Levno denied any phone calls after September 8 from Dawn Taylor. She testified

that Addus Healthcare offered her no hours, clients, or income after September 8, 2016.

Leanne Levno sued Addus Healthcare for wrongful termination in violation of

public policy and retaliatory discharge based on Addus Healthcare terminating her

employment on September 8, 2016, ten days after reporting abuse and neglect of Lois

Davenport to APS. CP 3-8. In her amended complaint, Leanne Levno alleged:

> 2.24 Ms. Levno was officially terminated from Addus on September 8, 2016.
> 2.25 Ms. Levno was terminated in retaliation for her reporting abuse of her client.
> 2.26 Ms. Levno was terminated in violation of public policy.
> . . . .
> 3.3 It is a violation of public policy to terminate the employment of an employee that is required to report abuse/neglect under RCW 74.34 *et seq*.
> 3.4 Under RCW 74.34.180, any employee that faces a workplace reprisal or retaliatory action for reporting abuse/neglect is granted the remedies of RCW 49.60 *et seq*.
> 3.5 Ms. Levno was terminated ten days after reporting the abuse/neglect of her client.
> . . . .
> 3.8 Ms. Levno's termination for reporting abuse is in violation of RCW 74.34 *et. seq*. and therefore, RCW 49.60 *et seq*.

CP at 12-13.

In support of its summary judgment motion, Addus Healthcare submitted excerpts

from Levno's deposition. Addus Healthcare emphasized the following passage in

Levno's deposition:

> Q. You never received a termination letter from Addus?

7

A. No.

CP at 82-83.

Leanne Levno responded by filing her own declaration. Levno testified, in part, in her declaration:

> 4. Addus did not respond to my repeated reports of abuse *until they* [sic] *fired me*.
> . . . .
> 10. After I reported the weekend caregiver, another Addus employee, to APS, Addus ended my employment.
> . . . .
> 12. I do not know exactly when Addus learned of my report, but they knew of it *when they terminated me*.
> 13. After being removed from the care of my only client, I was never offered work with another client.
> 14. I did not receive a letter from Addus instructing me to respond by September 30, 2016 or that I would be terminated.
> 15. I received no phone calls from Dawn Taylor in October 2016 regarding accommodations or work available to me.
> 16. Addus told my only client that I was terminated.
> 17. Addus states that I was not "terminated" but my weekly hours went from 40-60 hours per week to zero hours per week.
> 18. Whether Addus claims I was terminated or suspended is irrelevant because I was given zero hours, zero clients, and zero income.

CP at 287-89 (emphasis added).

On appeal, Leanne Levno challenges the trial court's grant of summary judgment to Addus Healthcare. We review a trial court's order granting summary judgment de novo. *Briggs v. Nova Services*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file and affidavits show that there is no genuine issue as to any material

8

fact. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). The purpose of summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. *Olympic Fish Products, Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980). Summary judgment is appropriate only when, from all the evidence, reasonable persons could reach but one conclusion. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000); *Clements v. Travelers Indemnity Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

Leanne Levno seeks recovery for retaliatory discharge in violation of RCW 74.34. Home health caregivers are mandated reporters, who must report suspected abuse of vulnerable adults. RCW 74.34.020(2), (14); 035. Failure to report subjects a caregiver to criminal and civil liability. RCW 74.34.053; *Kim v. Lakeside Adult Family Home*, 185 Wn.2d 532, 544-45, 374 P.3d 121 (2016). The Washington Supreme Court compares the importance of reporting abuse of vulnerable adults to reporting abuse of children. *Kim v. Lakeside Adult Family Home*, 185 Wn.2d at 543-44.

In turn, RCW 74.34.180 prohibits retaliation against whistleblowers of abuse or neglect of vulnerable adults. The lengthy statute declares, in relevant part:

> (1) An employee or contractor who is a whistleblower and who as a result of being a whistleblower has been subjected to workplace reprisal or retaliatory action, has the remedies provided under chapter 49.60 RCW. RCW 4.24.500 through 4.24.520, providing certain protection to persons who communicate to government agencies, apply to complaints made under this section. . . .

9

(2)(a) An attempt to expel a resident from a facility, or any type of discriminatory treatment of a resident who is a consumer of hospice, home health, home care services, or other in-home services by whom, or upon whose behalf, a complaint substantiated by the department or the department of health has been submitted to the department or the department of health or any proceeding instituted under or related to this chapter within one year of the filing of the complaint or the institution of the action, raises a rebuttable presumption that the action was in retaliation for the filing of the complaint.

(b) The presumption is rebutted by credible evidence establishing the alleged retaliatory action was initiated prior to the complaint.

. . . .

(3) For the purposes of this section:

(a) "Whistleblower" means a resident or a person with a mandatory duty to report under this chapter . . . , who in good faith reports alleged abandonment, abuse, financial exploitation, or neglect to the department, or the department of health, or to a law enforcement agency;

(b) "Workplace reprisal or retaliatory action" means, but is not limited to: Denial of adequate staff to perform duties; frequent staff changes; frequent and undesirable office changes; refusal to assign meaningful work . . . ; letters of reprimand or unsatisfactory performance evaluations; demotion; denial of employment; or a supervisor or superior encouraging coworkers to behave in a hostile manner toward the whistleblower. The protections provided to whistleblowers under this chapter shall not prevent a facility or an agency licensed under chapter 70.127 RCW from: (i) Terminating, suspending, or disciplining a whistleblower for other lawful purposes; or (ii) for facilities licensed under chapter 70.128 RCW, reducing the hours of employment or terminating employment as a result of the demonstrated inability to meet payroll requirements.

In addition to recovery for termination from employment, the statute allows damages for

refusal to assign meaningful work and for letters of reprimand.

Washington also permits a common law cause of action for wrongful discharge

when the discharge violates established public policy. *Bennett v. Hardy*, 113 Wn.2d 912,

922, 784 P.2d 1258 (1990). Leanne Levno asserts both a statutory claim and one at common law.

A claim of wrongful discharge in violation of public policy requires the plaintiff to show that he or she was discharged, and the discharge may have been motivated by reasons that "contravenes a clear mandate of public policy." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). The parties do not dispute that a discharge for whistleblowing would be a violation of RCW 74.34.180 as well as public policy.

Leanne Levno must show a causal link between the filing of her incident report and the adverse employment action. Causation can be shown by the timing of the adverse action to that of the protected activity. *Kahn v. Salerno*, 90 Wn. App. 110, 130-31, 951 P.2d 321 (1998). The Washington State Supreme court has stated that, in retaliation claims for filing a discrimination claim, the worker presents sufficient evidence of causality if the worker takes a protected action, the employer knows of the report, and the adverse action is taken against them. *See Allison v. Housing Authority of City of Seattle*, 118 Wn.2d 79, 89 n.3, 821 P.2d 34 (1991). Leanne Levno filed a report with APS, and, according to Levno's evidence, Addus Healthcare terminated her employment within 10 days. One supervisor earlier warned Levno that, if she reported abuse to APS again, Addus Healthcare would fire her.

Addus Healthcare argues that Leanne Levno presented no admissible evidence that the company terminated her employment. To Addus Healthcare, Levno only relied on speculation and argumentative assertions. She merely repeated her allegations in her complaint. She supplied ultimate facts and conclusions. Her declaration is self-serving, and her declaration contradicts her deposition testimony. Addus Healthcare emphasizes that the September 8, 2016, written notification to Leanne Levno disciplined her, rather than terminated her employment.

I agree that the September 8, 2016, written notification does not state that Addus Healthcare terminated Leanne Levno. The disciplinary notice that excludes mention of termination may harm the credibility of Leanne Levno's claim. But we do not weigh evidence or resolve questions of credibility in reviewing a summary judgment order. *Sluman v. State*, 3 Wn. App. 2d 656, 699, 418 P.3d 125 (2018).

I disagree that Leanne Levno fails to cite to the record to support her contention that Addus Healthcare terminated her employment. In both her opening and reply briefs, Levno repeatedly cites to pages 183 and 287 through 289 in the clerk's papers, on which she testified to her oral termination. She cites to the pages on which she testified that Addus Healthcare offered her no more work following the September 8, 2016 meeting.

Addus Healthcare complains that Leanne Levno's declaration is self-serving. Nevertheless, the healthcare company cites no authority that precludes a litigant from filing self-serving declarations. All of Addus Healthcare's declarations are self-serving.

12

Anyway, Leanne Levno's deposition testimony provides support for Levno's claims in addition to her declaration.

When contending that Leanne Levno contradicted her deposition testimony, Addus Healthcare contends Levno admitted in her deposition that she never received any termination notice from Addus. Addus Healthcare emphasizes the following passage in Levno's deposition:

> Q. You never received a termination letter from Addus?
> A. No.

CP at 82-83. One might be confused with the answer of Levno because of the double negatives. Even if Levno agreed she received no termination letter, it does not follow that Addus Healthcare did not terminate her employment. Levno has consistently testified that Dawn Taylor orally gave her notice of termination.

I do not deem Leanne Levno's critical testimony conclusory in nature. One's testimony that the other party told one something is factual in nature. Perhaps the testimony would be less conclusory in nature if Levno testified to the exact words uttered by Dawn Taylor, assuming Levno could remember the exact words. But Levno averred to the gist of the comments from Taylor—that she was fired. Addus Healthcare never asked Levno, in her deposition, as to the exact words used by Taylor or Levno's other supervisors.

No. 36735-5-III
*Levno v. Addus Healthcare, Inc.* (Dissent)

In short, Leanne Levno testified that Addus Healthcare supervisors informed her in person on September 8, 2016, that she was fired. Levno testified that she no longer received any work after September 8. Addus Healthcare disagreed and provided countering evidence, but Levno presented evidence sufficient to allow the trier of fact to resolve whether Addus Healthcare terminated her employment.

The majority writes that Leanne Levno stripped her use of the word "termination" from any probative, factual value. Majority at 9. No summary judgment principle allows a court to ignore the testimony of a declarant, even a party declarant, because the declarant misuses or confuses the meaning of a word. The court impermissibly weighs the credibility of the witness when discounting testimony because of the witness' misuse of words. Levno unequivocally testified that Dawn Taylor told her she was "being terminated from—from Addus." CP at 83, 351. The reader should not be confused by concluding, based on this deposition passage, that Levno only testified that Addus Healthcare removed her from the care of a client. Regardless, in her declaration, Leanne Levno employed the word "fired," when testifying to the action of Addus Healthcare toward her.

_____
Fearing, J.

14