174 P.3d 156 (2007)
Donna HERRIMAN and Dewey Herriman, husband and wife, Respondents,
v.
Gilbert MAY and Jane Doe May his wife and the Marital Community Thereof, and Frank May and Jane Doe May his wife and the Marital Community Thereof, and the Business Conducted by the Defendants Named Above, Appellants.
No. 25176-4-III.
Court of Appeals of Washington, Division 3.
December 20, 2007.
*157 Robert William Sealby, David Lawrence Force, Carlson McMahon & Sealby PLLC, Wenatchee, WA, for Appellants.
Richard B. Price, Richard B. Price, PS, Omak, WA, for Respondents.

PUBLISHED OPINION
SCHULTHEIS, J.
¶ 1 Donna Herriman sought damages from Gilbert May after he rear-ended her truck while she was stopped at an intersection. The jury awarded a substantially lower amount of damages than she requested. Ms. Herriman moved for a new trial, contending the verdict was inadequate. The trial court agreed and ordered additur or, in the alternative, a new trial. Mr. May appeals the trial court's order, contending sufficient credible evidence supported the jury's award of damages. We agree and reverse.

FACTS
¶ 2 On the morning of February 5, 2003, Gilbert May's truck hit Donna Herriman's truck from behind at a low rate of speed while she waited at an intersection. Ms. Herriman was taken to an emergency room and treated for multiple bruises. Her long-time doctor, Dr. Donald Brecht, examined Ms. Herriman on February 11, finding knee, rib, and chest bruising secondary to a car accident, but no fractures or internal injuries. Ms. Herriman sued Mr. May, seeking compensation for her injuries. Mr. May admitted liability, and the matter was tried to a jury on damages alone.
¶ 3 At trial, Ms. Herriman testified that after the accident she was in bed for several months and never returned to her job as a dental assistant. She was too fearful to resume driving. She participated in physical therapy for five weeks, but stopped because it was too painful. She claimed her life changed dramatically after the accident: she experienced chronic pain, suffered vision and balance loss, was no longer able to engage in family activities, had to limit her chores, and was unable to return to work.
¶ 4 Friends and family testified that Ms. Herriman deteriorated after the accident. By all accounts, before the accident, Ms. Herriman was a hard worker with a positive and outgoing personality. Her employer testified that she was a conscientious employee who never missed a day of work. One of Ms. Herriman's co-workers noted that Ms. Herriman appeared to be in a lot of pain after the accident. And Ms. Herriman's stepmother observed that Ms. Herriman's mobility was impaired.
¶ 5 Dr. Brecht opined that the accident was the sole source of Ms. Herriman's physical and emotional problems. Although he thought Ms. Herriman eventually improved, Ms. Herriman disagreed and refused his suggestion to try a pain clinic in Seattle. Instead, she asked him about obtaining total disability.
*158 ¶ 6 Dr. Brecht also testified that Ms. Herriman exhibited symptoms compatible with fibromyalgia, a disease characterized by profound fatigue and muscle pain. He explained that fibromyalgia can be caused by trauma to the musculoskeletal system. He also testified that Ms. Herriman was one of the few patients he did not expect to recover from soft tissue injuries.
¶ 7 The defense presented the testimony of Dr. David Whitney, a highly experienced orthopedic surgeon, who independently evaluated Ms. Herriman in May 2004. He noted that Ms. Herriman had a back injury that predated the 2003 accident and degenerative spinal change unrelated to the accident. He also noted that Ms. Herriman had no fractures or neurological compromise. He believed that her symptoms had an "extensive emotional overlay." Deposition of David Whitney, M.D., at 90.
¶ 8 Dr. Whitney testified that Ms. Herriman's complaints of pain "do not appear to fit with[in] the clinical picture and appear to be greatly exaggerated." Id. at 29. The results of a test given to evaluate exaggeration of pain symptoms revealed that Ms. Herriman reported pain where none could exist, she failed to give full effort to a grip test, and her range of motion was greater when he secretly observed her in the waiting room compared to testing in his presence. He found no loss of strength, numbness, reflex changes, or muscular atrophy that would indicate genuine weakness, noting that her complaints of numbness "just [don't] occur with real conditions." Id. at 32. He rejected Dr. Brecht's fibromyalgia diagnosis, observing that Ms. Herriman did not have pain at the required pressure points. He stated the muscular impact of the collision could have lasted three weeks at most.
¶ 9 Dr. Whitney concluded there was "no objective basis upon which to base any physical restrictions with respect to the injury of February 5, 2003." Id. at 37. He stated that as of May 2004, Ms. Herriman did not need any future medical care. Id. at 39.
¶ 10 Averaging her yearly earnings between 1998 and 2003, Ms. Herriman asked for lost wages from the date of the accident until September 2005 totaling $34,188. She also asked for lost future wages of approximately $230,000 based on what she would have earned until the age of 62. She requested medical expenses totaling $12,108.17 as well as $10,000 in future medical costs for chiropractic adjustments. She requested another $50,000 for pain and suffering. Her husband requested $50,000 for loss of consortium.
¶ 11 The jury awarded $16,000 for past economic damages, nothing for future economic damages, $10,000 for past and future noneconomic damages, and $3,000 for past and future loss of consortium. Ms. Herriman moved for a new trial pursuant to CR 59(a), arguing the damages were so inadequate that the verdict must have been the result of passion or prejudice.
¶ 12 The court granted an additur to the verdict or, in the alternative, a new trial, finding no reasonable evidence supported the claim that Ms. Herriman's pain and disability were nonexistent or exaggerated. Noting that Ms. Herriman's total medical expenses were $9,919.79 and that prior to trial she had lost wages in the amount of $34,103.86, the trial judge found her past economic damages were $44,023.65. He concluded that the jury's award of $16,000 for past economic damages was "outside the reasonable bounds of the evidence, not supported by the evidence and shocking." Clerk's Papers at 9. The court also concluded that Ms. Herriman lost a minimum of $48,078 in future economic damages (75 percent of five years of averaged yearly earnings).
¶ 13 The court ordered an increased verdict of $138,152 based on Ms. Herriman's appearance at trial, her history of hard work, the evidence of severe pain and loss of function, and loss of enjoyment of living. The court also ordered a new trial under CR 59(a)(5) unless the defendants agreed to increase the verdict.

ANALYSIS
New Trial
¶ 14 Mr. May contends that the trial court erred in granting a new trial. He asserts that it is within the jury's province to award *159 damages and that the award was within the evidence presented. CR 59(a) allows the trial court to grant a new trial for the following reasons:
(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;
. . . .
(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
. . . .
(9) That substantial justice has not been done.
¶ 15 Juries have considerable latitude in assessing damages, and a jury verdict will not be lightly overturned. Palmer v. Jensen, 132 Wash.2d 193, 197, 937 P.2d 597 (1997); Cox v. Charles Wright Academy, Inc., 70 Wash.2d 173, 176, 422 P.2d 515 (1967) (the law strongly presumes the adequacy of the verdict). We evaluate whether substantial evidence supports the jury's verdict, viewing the evidence in the light most favorable to the nonmoving party. Bunch v. King County Dep't of Youth Servs., 155 Wash.2d 165, 178, 116 P.3d 381 (2005); Gestson v. Scott, 116 Wash.App. 616, 622, 67 P.3d 496 (2003). "`If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.'" Lockwood v. AC & S, Inc., 109 Wash.2d 235, 243, 744 P.2d 605 (1987) (quoting Levy v. N. Am. Co. for Life & Health Ins., 90 Wash.2d 846, 851, 586 P.2d 845 (1978)). A trial court has no discretion to disturb a verdict within the range of evidence. Bunch, 155 Wash.2d at 177-78, 116 P.3d 381 (quoting Hendrickson v. Konopaski, 14 Wash.App. 390, 394-95, 541 P.2d 1001 (1975)).
¶ 16 Further, inconsistencies in evidence are matters which affect weight and credibility and are within the exclusive province of the jury. Dupea v. City of Seattle, 20 Wash.2d 285, 290, 147 P.2d 272 (1944); McUne v. Fuqua, 45 Wash.2d 650, 653, 277 P.2d 324 (1954). In McUne, the Washington Supreme Court reversed a decision in which the trial court granted a new trial due to the jury's failure to award damages. McUne, 45 Wash.2d at 651, 277 P.2d 324. In finding that the evidence supported the jury verdict the court noted that the evidence was strongly conflicted as to whether the plaintiff suffered the alleged injuries and emotional upset. Id. at 653, 277 P.2d 324. Due to this conflicting evidence, the court concluded there was substantial evidence to support the jury's award. Id.
¶ 17 Here, there is no dispute that Ms. Herriman suffered multiple bruises as a result of the accident, but the evidence is conflicting as to the seriousness of the injuries and whether they created permanent disability. Notably, Dr. Whitney opined that there was no basis for any permanent impairment related to the 2003 accident. Based on objective testing, he concluded that Ms. Herriman was significantly exaggerating her symptoms. He was also emphatic that she did not suffer from fibromyalgia. Although Dr. Brecht disagreed with Dr. Whitney, the jury was entitled to reject Dr. Brecht's testimony.
¶ 18 It was also within the jury's province to reject Ms. Herriman's testimony. There was evidence before the jury that Ms. Herriman was exaggerating her symptoms and malingering. Ms. Herriman's chiropractor testified that in 1999 Ms. Herriman came to him complaining of stabbing pain and inability to work or move. However, in 2004, she told him she had never had these symptoms. We will not reweigh the jury's assessment of Ms. Herriman's credibility.
¶ 19 There was also evidence that Ms. Herriman had pre-existing physical problems. In 1999, Ms. Herriman saw a chiropractor for chronic neck and back pain due to repetitive movement at work. In February 2001, she was treated for high stress, numbness on her right side, dizziness, and blurred vision. Also in 2001, Ms. Herriman suffered whiplash in another car accident. X-rays revealed that portions of her spine had been crushed.
¶ 20 The jury also had evidence of an emotional component to Ms. Herriman's physical complaints. Dr. Whitney believed *160 Ms. Herriman's emotional distress was skewing her physical symptoms. Physical examinations revealed no evidence of any musculoskeletal impairment. In October 2004, Ms. Herriman had full range of motion in all her extremities. An ophthalmologist believed that Ms. Herriman's blurred vision was the result of incorrect lenses.
¶ 21 Substantial credible evidence supported the jury's verdict. The credibility of the witnesses and the weight of the evidence was a question for the jury alone. Accordingly, we conclude that the trial court erred in overturning the verdict of the jury and ordering a new trial.
Additur
¶ 22 Mr. May also contends the court erred in granting additur because the jury's award was within the range of evidence presented at trial. A trial court may grant a motion for an award of additur if it finds that "the damages awarded by a jury [are] so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice." RCW 4.76.030. A decision to increase a jury's award is reviewed de novo. Robinson v. Safeway Stores, Inc., 113 Wash.2d 154, 161-62, 776 P.2d 676 (1989) ("[W]here the jury verdict is within the range of credible evidence, the trial court has no discretion to find passion or prejudice affected the verdict for the purpose of ordering additur.").
¶ 23 Where the proponent of a new trial argues the verdict was not based on the evidence, we review the record to determine whether sufficient credible evidence supports the verdict. Palmer, 132 Wash.2d at 197, 937 P.2d 597. We start with the presumption that the verdict was correct. RCW 4.76.030; Hill v. GTE Directories Sales Corp., 71 Wash.App. 132, 138, 856 P.2d 746 (1993). The verdict must be so inadequate "on its face" as to clearly show jury prejudice and will be disturbed only in extraordinary circumstances. Robinson, 113 Wash.2d at 161, 776 P.2d 676 (emphasis omitted); Hill, 71 Wash.App. at 138, 856 P.2d 746.
¶ 24 Such circumstances are not present here. The damage award was well within the range of credible evidence. Expert medical testimony, if believed, established that Ms. Herriman was exaggerating her pain, physical recovery from the accident should have occurred within three weeks of the accident, Ms. Herriman had no permanent injuries related to the accident, and no further medical treatment was needed.
¶ 25 Although the trial court found Ms. Herriman's evidence more persuasive than the jury did, the record contains sufficient contrary testimony to support the jury award. Because the jury award of damages was within the range of evidence, the court had no discretion to substitute its judgment.

CONCLUSION
¶ 26 For the reasons indicated, we reverse the trial court's orders granting additur or a new trial and reinstate the jury award.
WE CONCUR: SWEENEY, C.J., and BROWN, J.