2015 SEP 14 AM 9: 2o


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JESS NELSON, an individual, | ) | NO. 71709-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ERICKSON and JANE DOE | ) | UNPUBLISHED OPINION |
| ERICKSON, and the marital community | ) | |
| composed thereof, | ) | FILED: September 14, 2015 |
| Appellants. | ) | |

LAU, J. — Jess Nelson sued Michael Erickson for personal injuries suffered in a

car accident. Erickson appealed the arbitrator's award. After a Mandatory Arbitration

Rule (MAR) trial de novo, the jury awarded past and future medical expenses and past

general damages. It awarded no amount for future pain and suffering. The trial court

granted additur and increased the award by $3,000 for future pain and suffering. It

granted attorney fees and costs to Nelson ruling that Erickson failed to improve his

position at trial. Erickson appeals the grant of additur and award of MAR fees and

costs.

He argues the evidence is insufficient to warrant additur and he improved his position at trial. The award of no general damages for future pain and suffering is contrary to the evidence and Erickson improved his position at the trial de novo. We affirm in part, reverse in part, and remand with instructions to vacate the MAR attorney fees and costs award to Nelson.

## FACTS

### Procedural History

In December 2010, Michael Erickson totaled his Jeep after he hit the rear of Jess Nelson's truck.

In October 2012, Nelson filed a personal injury lawsuit in King County Superior Court.

Nelson transferred his case to mandatory arbitration pursuant to chapter 7.06 RCW. The arbitrator awarded Nelson $11,167 in special medical damages, $234.59 in out of pocket expenses, $32,000 in general damages for pain and suffering, and attorney fees and costs of $1,522.19.

In May 2013, Erickson requested a MAR trial de novo.

In September 2013, Nelson sent Erickson an offer of compromise to settle the claim for "$26,000 plus taxable costs incurred at arbitration." Clerk's Papers (CP) at 839. Erickson rejected the offer.

Before trial, the parties stipulated that Nelson was injured in the accident and incurred $9,361 in past medical expenses for the eight months following the accident. Erickson disputed Nelson's remaining claims for $1,806 in past medical expenses, the

-2-

necessity and reasonableness of future medical expenses, and past and future noneconomic damages.

Trial Testimony

At the three day trial, Nelson and his friends and family testified about the impact of the injuries on his life, daily activities, and recreational activities. His treating doctor and physical therapist spoke about Nelson's diagnosis and treatment.

Nelson's family and friends generally described how his injuries caused him to stop or limit the activities they enjoyed together before the accident. For example, several long-time friends said Nelson quit fly fishing and boating due to the noticeable pain these activities caused.

Nena Nelson said her husband stopped training for a planned hiking trip. She considered moving out because his pain made living with him after the accident unbearable.

Nelson testified about his physical condition before and after the accident. He was pain free before the accident. He described the effect of the injuries on his life, daily activities, and recreational activities. His pain limited his ability to golf, hunt, fish, hike, go boating, and to do hobby projects.

He received six to eight months of chiropractic treatment and completed an initial course of physical therapy. He also exercised at the gym as suggested by his chiropractor. According to Nelson, his pain has never gone away since the accident.

Dr. Larry Harper diagnosed and treated Nelson's injuries. He diagnosed Nelson with cervical dysfunction and lower back dysfunction caused by the accident. He agreed on the necessity and reasonableness of Nelson's chiropractic and physical

therapy treatments for pain. He referred Nelson to a nonsurgical neck and back specialist to evaluate the possibility of nerve involvement.

Dr. Harper reviewed the specialist's medical records. The records indicated some neck dysfunction, muscle strain and soft tissue pain in the neck and upper shoulders, numbness and tingling in his right fourth and fifth fingers, lower back muscle spasm, and dysfunction of the lower back. The specialist discussed various treatment options for Nelson including treatment with injections if Nelson continued to have ongoing persistent pain. The cost for cervical epidural steroid injections is about $2,000-3,000 for each. Imaging revealed the presence of asymptomatic "degenerative disk disease," an age related, often asymptomatic condition. Report of Proceedings (RP) (Nov. 6, 2013) at 272-73. Dr. Harper excluded degenerative disk condition as the source of Nelson's postaccident pain. In his opinion, an accident "[c]ertainly may aggravate or accelerate the rate of development of symptomology" and may speed up the rate of degeneration. RP (Nov. 6, 2013) at 281. According to Dr. Harper, the accident caused Nelson's injury, his condition was permanent, and he continued to experience pain. On future treatment, Dr. Harper stated:

> I would recommend either seeing a pain specialist about ongoing chronic pain issues or back to physical medicine to look at changes in possible MRI scans and need for injection treatments. Or I send a lot of people to acupuncturists also.

RP (Nov. 6, 2013) at 279.

Physical therapist Daniel Washeck testified that he treated Nelson for about nine months following the accident. He noted Nelson experienced pain when moving his head and neck. Washeck also noted muscle guarding and diminished range of motion. During his last visits, Nelson's neck stiffness and immobility persisted. Nelson reached

75 percent of his range of motion by his last visit in December 2011. In Washeck's opinion, Nelson's pain was permanent if it persisted for three years postaccident.

Hired by the defense, retired orthopedic surgeon Allen Jackson testified about his medical records review and physical examination of Nelson.

Dr. Jackson concluded that Nelson suffered a soft tissue injury to his neck and lower back. He expected full recovery in a normal anatomy in about three weeks to three or four months. He noted Nelson's abnormal anatomy due to normal age-related wear and tear—"multilevel degenerative changes." RP (Nov. 6, 2013) at 419. He offered no opinion on the effect of these degenerative changes on Nelson's symptoms. In his experience, such changes often prolong the recovery period.

Dr. Jackson agreed that Nelson, his family, and his friends truthfully described Nelson's pain and symptoms. He also agreed that Nelson's use of medication, massage and chiropractic treatments for six to eight months was necessary and reasonable given his accident-related injuries. But any treatment beyond this period was not reasonable and necessary absent objective evidence of accident-related symptoms.

> I need some kind of objective evidence that I can measure that correlates this event with these symptoms. And if I can't—if I don't have some objective finding, whether it's on an MRI or an EMG or an X ray or a physical exam, that shows that there is some reason that I can explain that connects these two events, that is, his ongoing symptoms with his injury, then I have to conclude that I don't see objective evidence that correlates the two, subjective symptoms or basically his symptoms. I mean, I can't measure or nor can anyone else measure his symptoms.

RP (Nov. 6, 2013) at 423.

He also declined to conclude that Nelson "sustained a permanent injury." RP (Nov. 6, 2013) at 424. He acknowledged that Nelson was asymptomatic before the

accident and suffered injuries from the accident. Dr. Jackson's tests showed Nelson was not faking his injuries or pain. Dr. Jackson admitted he relied on averages to estimate Nelson's recovery time.

> [Defense Counsel]: Okay. So the average has nothing to do with how Jess Nelson would recover?
> [Jackson]: Other than it gives you some yardstick to what your expectations would be, yeah. That doesn't specifically address him as an individual.

RP (Nov. 6, 2013) at 433.

He readily conceded that soft tissue injuries cannot be diagnosed by imaging studies. Instead, treatment for soft tissue injury depends upon the patient's subjective complaints and a physical exam. He declined to give an opinion on whether Nelson was symptom free after he completed chiropractic treatments.

Dr. Jackson acknowledged that a person who still experiences neck pain and intermittent back pain three years postaccident likely suffered a permanent injury. He conceded that from an orthopedic surgeon's perspective, nothing could be done for a person still suffering neck and back pain three years after the accident. Dr. Jackson agreed that referral to a pain management specialist or a physical therapist would be reasonable for a patient with Nelson's symptoms:

> [Defense Counsel]: And what you would do if that person came to you is you would probably refer them to a pain management specialist; is that right?
> [Dr. Jackson]: I might do that, yes.
>  . . . .
> [Defense Counsel]: Okay. How about more physical therapy? Would that be something that would be reasonable?
> [Dr. Jackson]: I think physical therapy is helpful for people who have certain conditions of the spine. And I think if their symptoms wax and wane, that repeat physical therapy for short periods of time are helpful when their symptoms flare. So, yeah, I think physical therapy is helpful.

RP (Nov. 6, 2013) at 455.

Dr. Jackson recommended treatment options for a patient like Nelson:

[Dr. Jackson]: Well, if [Nelson] were my patient, I'm not exactly sure what I would recommend for him. I mean, I might recommend some additional medication for him. I might recommend short-term physical therapy for him. But I might recommend he see a rheumatologist for treatment. So there are lots of modalities that I might consider if he were my patient.
[Defense Counsel]: And any of those modalities would be reasonable, right?
[Dr. Jackson]: Well, I think they would be.

RP (Nov. 6, 2013) at 457.

Dr. Jackson agreed that some patients experience chronic pain:

[Defense Counsel]: You—in your practice you had a bunch of—well, I don't know about a bunch—but you've treated people that wound up being—having chronic pain?
[Dr. Jackson]: I have.
[Defense Counsel]: That's not an abnormal thing to have happen?
[Dr. Jackson]: Well, I wouldn't say it's—I wouldn't qualify it as saying it's not abnormal. I think pain is—you know, chronic pain is not the usual.

RP (Nov. 6, 2013) at 455.

Dr. Jackson expressed "no doubt" that Nelson truthfully described his condition.

RP (Nov. 6, 2013) at 459. He doubted that Nelson's ongoing pain was related to the accident.

[Defense Counsel]: Okay. So just to summarize it, just so it's clear for the jury, the issue here is not—there's pain. It's that pain related to the collision. At some point you say no, correct?
[Dr. Jackson]: That's my opinion, yes.
[Defense Counsel]: And at what point do you believe the pain is no longer related to the collision?
[Dr. Jackson]: Somewhere between six and eight months, as I previously said.

RP (Nov. 6, 2013) at 459.

He acknowledged he treated patients who, like Nelson, complain of pain but with no objective confirmation such as imaging.

Closing Arguments

Nelson argued in closing that the accident caused his previously asymptomatic

degenerative disk condition to "light up,"[1] resulting in ongoing chronic pain:

> That's exactly what we've got here, a condition not causing any pain or disability, didn't even know he had it. Gets hit. It's lighted up, made symptomatic, and now it's permanent. And the—the law is, Instruction No. 9, this is the law that needs to guide this case for you, is that this defendant is responsible for everything that comes with that lighting up. Not part of it. Not some of it. All of it.

RP (Nov. 7, 2013) at 507.

He argued that future injections and physical therapy for chronic pain was

reasonable according to Dr. Jackson.[2] He noted Dr. Harper recommended regular pain

management treatment. Assuming a life expectancy of 24 years, Nelson estimated

necessary and reasonable medical expenses of $10,000 to $15,000. He asked for

$33,000 in past noneconomic damages and a fair award for future noneconomic

damages.

Erickson admitted liability for the accident. He claimed six months of treatment

for Nelson's "sprain/strain" injury was reasonable. RP (Nov. 7, 2013) at 516. Erickson

did not dispute that Nelson's pain was "ongoing." He argued that the dispute centered

on whether the accident proximately caused the pain that extended beyond six to eight

months:

> And I think it's important to think about and consider in coming to your decision because what we have disputed in this case is not that Mr. Nelson has pain. It seems clear. I think he's an honest guy. He seems to

---

[1] The court instructed the jury on Nelson's theory that the accident caused his previously asymptomatic degenerative disk condition to "light up," causing his ongoing pain. The presence of degenerative changes in Nelson's spine was not a disputed issue. Dr. Jackson said the accident exacerbated the degenerative condition.

[2] The evidence shows that Dr. Harper and the back specialist, not Dr. Jackson, indicated that injection treatment for Nelson's chronic pain is reasonable.

have pain in his neck that's ongoing. But a bigger issue is was that—is that related to the collision that occurred almost three years ago. What—what could we point to?

RP (Nov. 7, 2013) at 520.

What you have is essentially injury to soft tissue that in normal human beings resolves in four to 12 weeks. If you have some degenerative changes, six to eight—even eight months. But beyond that, on a more-probable-than-not basis, which is the standard here, to a reasonable degree of medical certainty, Dr. Jackson says I can't say that's related.

RP (Nov. 7, 2013) at 521-22.

Erickson agreed on past medical expenses of $9,361. He disputed $1,806[3] in past medical expenses as not reasonable and necessary. Erickson asked the jury to award Nelson $10,000 as reasonable compensation for past noneconomic damages.

The court instructed the jury on Nelson's burden of proving damages and the factors to consider when awarding past and future general damages proximately related to the accident.

The jury returned the following verdict, totaling $24,167:

(1) Stipulated medical expenses: $9,361.00
(2) Past medical expenses: $1,806.00
(3) Future medical expenses: $10,000.00
(4) Past noneconomic damages: $3,000.00
(5) Future noneconomic damages: $0.00

CP at 843.

---

[3] Erickson's closing remarks misstated the amount in dispute as $1800.06. The jury awarded Nelson $1,806.

-9-

The trial court denied Nelson's motion for a new trial but granted the motion for additur:

> 3) [T]he motion for additur for future noneconomic damages IS GRANTED and an additur in the amount of $3,000.00 shall replace the jury award of $0.00. All other relief and the request for any other additional additur IS DENIED.
>
> The <u>court finds that the lack of a jury award for future noneconomic damages is inconsistent with the evidence and the decision to award future medical expenses. The evidence supporting future medical expenses was based on uncontroverted testimony that the Plaintiff was continuing to experience pain now and in the future.</u> The request for future treatment was specific to the treatment of that pain and there was no evidence to support any intervening cause for the pain. Although this court is reluctant to disturb a jury verdict, justice was not served by the verdict and <u>an award that does not even acknowledge the pain while providing for future medical treatment is inconsistent.</u> It is difficult for the court to substitute its judgment for a jury's determination of future pain and suffering, and despite Plaintiff's desire for a larger measure of damages, the court declines to exceed the value placed on Plaintiff's past pain and suffering.

CP at 670-71 (emphasis added).

Erickson moved unsuccessfully to reconsider. He argued that it was not inconsistent for the jury to award future special damages but no future general damages.

Nelson moved for attorney fees and costs under MAR 7.3 and RCW 7.06. On reconsideration, the court granted the request and awarded $58,980 in attorney fees and $4,488.90 in costs.[4]

Erickson appeals the award of additur and MAR attorney fees and costs.

---

[4] The court entered final judgment in the amount of $91,365.88.

ANALYSIS

Additur

Under RCW 4.76.030,[5] when a party moves for a new trial, the trial court is authorized to reduce or increase the verdict in lieu of a new trial if it obtains the consent of the adversely affected party.[6]

Here, the trial court denied Nelson's motion for a new trial but granted additur in the amount of $3,000 for future pain and suffering. Erickson moved unsuccessfully for

---

[5] RCW 4.76.030 states in relevant part:
If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict, and if such party shall file such consent and the opposite party shall thereafter appeal from the judgment entered, the party who shall have filed such consent shall not be bound thereby, but upon such appeal the court of appeals or the supreme court shall, without the necessity of a formal cross-appeal, review de novo the action of the trial court in requiring such reduction or increase, and there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the court of appeals or the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice.

[6] Erickson argues that RCW 4.76.030 requires the trial court to obtain his consent before granting additur. Absent his consent, the trial court lacked authority to make the award. Erickson raises this issue for the first time on appeal. We do not consider issues raised for the first time on appeal. RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995); State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988) ("The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial"). Further, "[n]onconstitutional issues, as well as most constitutional ones, may not be raised for the first time on appeal in a regular civil appeal from a superior court judgment." City of Bellevue v. King County Boundary Review Bd., 90 Wn.2d 856, 863-64, 586 P.2d 470 (1978).

reconsideration, arguing that he produced sufficient evidence at trial to justify the jury's refusal to award future general damages.

Erickson argues that the trial court erred by granting additur.[7]

Determination of the amount of damages is within the jury's province, and courts are reluctant to overturn a verdict when fairly made. Palmer v. Jensen, 132 Wn.2d 193, 197, 937 P.2d 597 (1997). This court begins with the presumption that the jury's verdict was correct. RCW 4.76.030; Herriman v. May, 142 Wn. App. 226, 234, 174 P.3d 156 (2007). A decision to increase a jury's award is reviewed de novo. Robinson v. Safeway Stores, 113 Wn.2d 154, 161-62, 776 P.2d 676 (1989).

A trial court may grant additur where the jury's verdict on its face is so inadequate as to indicate it must have resulted from passion or prejudice. RCW 4.76.030; Robinson, 113 Wn.2d at 161. The question of whether a plaintiff is entitled to general damages turns on the evidence. Palmer, 132 Wn.2d at 201. "Although there is no per se rule that general damages must be awarded to every plaintiff who sustains an injury, a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages." Palmer, 132 Wn.2d at 201. Where the record shows "categorically" an award for special damages but not for proved general damages, additur and a new trial may lie. Cox v. Charles Wright Academy, Inc., 70 Wn.2d 173, 177, 422 P.2d 515 (1967).

---

[7] He assigns error to the court's related finding that there was no dispute Nelson's injuries were permanent or that he would continue to suffer pain in the future. Our review of this issue is de novo. Thus any findings are superfluous. The trial court made this finding to support its fees and costs award not its additur award.

Appellate courts look to the record in determining whether sufficient evidence supports a verdict. Palmer, 132 Wn.2d at 197-98. If the verdict is within the range of credible evidence, the trial court lacks discretion to find passion or prejudice affected the verdict for the purpose of awarding additur. Robinson, 113 Wn.2d at 161-62.

Erickson relies on Lopez v. Salgado-Guadarama, 130 Wn. App. 87, 89-90, 122 P.3d 733 (2005), and Herriman. In Lopez, plaintiff sued the defendant after a low-impact, no property damage car accident. At trial, the defendant's expert witness claimed a quick recovery and no objective findings supported the plaintiff's pain. Lopez, 130 Wn. App. at 89-90. The jury awarded special damages for medical expenses, but no general damages for pain and suffering. The trial court denied the plaintiff's motion for a new trial or additur. Division Three of this court affirmed, concluding that unlike in Palmer, the defendant disputed every aspect of the plaintiff's damages, and the plaintiff's credibility was in question. Lopez, 130 Wn. App. at 92. The court held that "[g]iven the evidence, the jury was entitled to conclude that the plaintiff incurred reasonable medical expenses as a result of the accident, while at the same time concluding he failed to carry his burden of proving general damages." Lopez, 130 Wn. App. at 93.

In Herriman, the defendant rear-ended the plaintiff while driving at a low rate of speed. Herriman, 142 Wn. App. at 228. At trial, a defense expert testified about plaintiff's preexisting back injury and attributed her symptoms to "extensive emotional overlay." Herriman, 142 Wn. App. at 230. He said she greatly exaggerated her pain complaints and secret surveillance indicated she faked her range of motion. He said no objective evidence explained her "physical restrictions." Herriman, 142 Wn. App. at

230. The jury awarded past economic damages, no future economic damages, and $10,000 for past and future noneconomic damages. The trial court granted the plaintiff's request for additur or, in the alternative, a new trial. Division Three of this court reversed the grant of additur noting significant disagreement over the seriousness and permanence of the injuries, evidence of exaggeration and malingering, preexisting ailments, and emotional component to the pain. Herriman, 142 Wn App. at 233. The jury was entitled to conclude that the plaintiff exaggerated her pain, should have recovered within three weeks, suffered no permanent injuries, and required no additional medical treatment. Herriman, 142 Wn. App. at 234-35.

Nelson analogizes to Palmer v. Jensen. There, the plaintiff presented uncontested medical evidence that she experienced pain after she was rear-ended by the defendant. The jury returned a verdict for $8,414.89 in special damages claimed at trial. Palmer, 132 Wn.2d at 201. The jury declined to award general damages for pain and suffering. Palmer, 132 Wn.2d at 198-99. The trial court denied the plaintiff's motion for a new trial. The Supreme Court reversed, concluding that the jury's failure to award general damages was contrary to the evidence because she presented uncontroverted evidence of ongoing, serious pain. The court reasoned, "a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages." Palmer, 132 Wn.2d at 201. The court concluded that the jury's failure to provide for such an award was contrary to the evidence. Palmer, 132 Wn.2d at 203.

We are not persuaded by Lopez and Herriman. This case is more like Palmer. Nelson presented undisputed evidence that three years postaccident, he continued to suffer chronic pain from the accident. Nelson, his friends, and family testified to

-14-

Nelson's ongoing pain and its effect on his daily and recreational activities. Both Dr. Jackson and Dr. Harper agreed that Nelson was pain-free before the accident. Dr. Jackson, Dr. Harper and physical therapist Washeck all agreed that existence of chronic, ongoing pain three years postaccident is a permanent injury. Dr. Jackson and Dr. Harper suggested treatment modalities for a person suffering chronic pain—referral to a pain management specialist, treatment by rheumatologist, additional physical therapy, medication, and treatment with injections. Dr. Jackson acknowledged his medical review indicated no other cause for Nelson's present pain complaints. Erickson agreed in closing remarks that Nelson was truthful when he testified that three years postaccident he continued to experience pain. He referred to Nelson as "an honest guy." RP (Nov. 7, 2013) at 520. Counsel disputed a discrete issue—whether Nelson's symptoms after eight months of treatment were proximately caused by the accident. The jury awarded $10,000 for future medical expenses, the exact amount Nelson requested in his closing argument. But it declined to award any amount for future pain and suffering. This award of future medical treatment expenses necessarily establishes that the accident proximately caused Nelson's injuries and need for future medical treatment.

Our review of the record shows the jury's omission of future general damages for pain and suffering is contrary to the evidence discussed above. Here the jury awarded $10,000 for future medical expenses. The trial evidence established Nelson's need for future medical treatment due to his ongoing chronic pain. In awarding damages for future medical expenses, the jury necessarily determined that such future expenses were reasonable, necessary, and causally related to the accident and for treatment of

-15-

Nelson's ongoing chronic pain. Unlike in Lopez and Herriman, here there was no evidence of preexisting neck-back pain, exaggeration, malingering, emotional component or lack of credibility. As Erickson candidly acknowledged, Nelson is "an honest guy."

In sum, the medical and lay witness evidence substantiates Nelson's claim that he experienced past and future special and general damages. We conclude the jury's verdict providing no damages for future general pain and suffering contradicts the evidence. Accordingly, we affirm the court's grant of additur in the amount of $3,000.

### MAR Attorney Fees

Erickson argues that the trial court improperly awarded Nelson attorney fees and costs under MAR 7.3 and RCW 7.06.050 because he improved his position at trial. He assigns error to the court's finding that Nelson's offer of compromise was for $26,000 and its related finding that the verdict amount exceeded the offer of compromise.

The trial court denied Nelson's initial request for attorney fees and costs. On reconsideration, the court reversed the decision and granted the award because it misapplied the holding in Niccum v. Enquist, 175 Wn.2d 441, 286 P.3d 966 (2012):

> The Ct. grants the Motion to Reconsider based on a re-reading of Niccum. This Ct. erred in the first instance by including costs in the offer. Mr. Nelson's offer of compromise was for $26,000.00. Defendant Erickson failed to improve his position at trial and Pl. is entitled to fees + costs.

CP at 1055.

The application of a court rule is a question of law subject to de novo review. Niccum, 175 Wn.2d at 446. Whether a statute authorizes an award of attorney fees is a question of law this court reviews de novo. Niccum, 175 Wn.2d at 446.

-16-

Under MAR 7.3, "[t]he court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo." Likewise, "[t]he superior court shall assess costs and reasonable attorneys' fees against a party who appeals the award and fails to improve his or her position." RCW 7.06.060.

The question here is whether Erickson improved his position on trial de novo.

Before trial, Nelson served Erickson with a written offer of compromise:

> Pursuant to RCW 7.06.050 and MAR 7.3 Plaintiff JESS NELSON hereby offers to settle his claim against Defendant MICHAEL ERICKSON and JANE DOE ERICKSON in the amount of $26,000 plus taxable costs incurred at arbitration. This offer is open for ten calendar days after receipt of service.

CP at 839 (emphasis added).

Erickson contends that under the statute, rule, and case law he improved his position. He asserts that Nelson made a clear offer to settle his case for a total of $27,522.19. He confirmed this compromise offer in an e-mail to Nelson.

Nelson responds by pointing to Niccum v. Enquist, 175 Wn.2d 441, 286 P.3d 966 (2012), for support. There, our Supreme Court addressed "whether it is proper to subtract costs from an offer of compromise that purports to include them before comparing that offer to the jury's award for purposes of MAR 7.3." Niccum, 175 Wn.2d at 446. The defendant filed a request for a trial de novo following an arbitrator's award in favor of the plaintiff. Before trial, the plaintiff made a confusing compromise offer that included costs to which he was not entitled because "Niccum did not enjoy 'prevailing party' status, he did not have the right to include costs in his offer of compromise." Niccum, 175 Wn.2d at 450.

The question here is whether Erickson improved his position on the trial de novo for purposes of a MAR 7.3 award of fees and costs.

When a party makes an offer of compromise following arbitration, the offer becomes the amount used to determine whether a party improved his position on trial de novo. RCW 7.06.050(1)(a). Under subsection (b) of this provision, the offer of compromise "shall" replace the amount of the arbitrator's award for determining whether the appealing party failed to improve its position at the end of the trial de novo. RCW 7.06.050(1)(b). From the offer of compromise amount compared to the jury's award, a court determines whether the appealing party after arbitration improves its position for purposes of MAR 7.3.

The essential point in <u>Niccum</u> was to discourage litigants from making confusing offers.[8]

> Niccum's position rests on the premise that an offer of compromise that purports to include costs actually does so. There is, however, no statutory justification for segregating an offer of compromise into separate amounts corresponding to damages and costs. A party may ask for an extra $1,000 in an offer of compromise to cover its expenses, but those dollars do not constitute "costs" as that term is defined in RCW 4.84.010, i.e., sums "allowed to the prevailing party upon the judgment." They are just dollars. Thus, comparing the jury's $16,650 award to Niccum's $17,350 offer of compromise does not involve a comparison of damages to damages plus costs, as Niccum suggests, but rather a comparison of damages to the lump sum that he offered to accept in exchange for settling the lawsuit.

<u>Niccum</u>, 175 Wn.2d at 450.

> Confronted with an offer purporting to contain unspecified costs, a party will have difficulty determining what position it must improve upon to avoid paying reasonable attorney's fees if it elects to continue to trial. Indeed, it is not entirely clear whether the figure Niccum provided the trial court for his "costs," $1,016.28, is limited to expenses incurred for arbitration.

---

[8] <u>Niccum</u> was decided a year before Nelson made his offer.

-18-

Niccum, 175 Wn.2d at 452.

We are not persuaded by Nelson's argument that Erickson should have known Nelson did not have the right to include costs in his offer of compromise. Nelson wanted to settle the case and controlled the substance of his offer. Nelson's offer was quite clear. He offered to settle his case for "$26,000 plus taxable costs incurred in arbitration." Unlike in Niccum, the costs here constituted a sum certain—$1,522.19. Erickson's October 24, 2013 e-mail to Nelson left no doubt when it referred to $27,522.19 as the amount of Nelson's "prior offer of compromise" and asked Nelson to let him know if this was incorrect. CP at 938.

Under these circumstances, Nelson's offer—which was intended to replace the arbitrator's award—would be understood as having the same structure as the arbitrator's award—damages plus attorney fees and costs.

> The statute requires the court to determine whether the appealing party failed to improve his position. RCW 7.06.050. The rule "was meant to be understood by ordinary people who, if asked whether their position had been improved following a trial de novo, would certainly answer 'no' in the face of a superior court judgment against them for more than the arbitrator awarded." Cormar, Ltd. v. Sauro, 60 Wn. App. 622, 623, 806 P.2d 253, review denied, 117 Wn.2d 1004, 815 P.2d 266 (1991).

Gautam v. Hicks, 177 Wn. App. 112, 118, 310 P.3d 862 (2013).

"It is our view that an ordinary person would consider that the 'amount' of an offer of compromise is the total sum of the money that a party offered to accept in exchange for settling the lawsuit." Niccum, 175 Wn.2d at 452.

A straightforward application of the rule under the circumstances here shows that Erickson improved his position on trial de novo. Nelson is not entitled to reasonable attorney fees and costs.

Attorney Fees on Appeal

Nelson requests an award of attorney fees under MAR 7.3, RCW 7.06.060, RAP 14.2, and RAP 18.1.

Under RAP 18.1, appellate courts are authorized to award reasonable attorney fees or expenses where authorized by applicable law. Although not expressly stated in MAR 7.3 or RCW 7.06.060, a "party entitled to attorney fees under MAR 7.3 at the trial court level is also entitled to attorney fees on appeal if the appealing party again fails to improve her position." Arment v. Kmart Corp., 79 Wn. App. 694, 700, 902 P.2d 1254 (1995). Because Erickson improved his position at trial, we decline to award fees and costs on appeal to Nelson. And because neither party substantially prevailed, we decline to award costs under RAP 14.2.

## CONCLUSION

For the reasons discussed above, the trial court properly awarded additur but erroneously awarded MAR fees and costs to Nelson. Accordingly, we affirm the judgment in part, and reverse in part, and remand with instructions to vacate the award of fees and costs to Nelson.

WE CONCUR:

-20-