# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VINCENT SCERRI, | No. 53254-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — Vincent Scerri sustained an industrial injury to his low back. The Department of Labor and Industries (Department) accepted Scerri's workers' compensation claim for the low back injury, as well as depression, adjustment disorder, and a pain disorder resulting from the back injury. Scerri died of causes unrelated to the industrial injury, and the Department closed his workers' compensation claim, awarding him permanent partial disability for this low back and mental health conditions. The Department also denied his wife's application for survivor's benefits because Scerri was not permanently and totally disabled at the time of his death. Appellant[1] appealed the Department's decision denying survivor's benefits to the Board of Industrial Insurance Appeals (BIIA), which upheld the Department's decision.

---

[1] This opinion uses the term "appellant" because Vincent Scerri is deceased.

Appellant appealed the BIIA's decision to the superior court, which resulted in a jury verdict finding that sustained the BIIA's decision. Appellant moved to set aside the jury's verdict and for a new trial, which the superior court denied. Appellant now appeals the superior court's denial of the motion to vacate verdict and for a new trial. Appellant argues that the jury's verdict was not supported by substantial evidence.[2]

We hold that the jury's verdict was supported by substantial evidence. Accordingly, we affirm the trial court's denial of the motion to vacate verdict and for a new trial.

FACTS

A.      THE INDUSTRIAL INJURY

On May 28, 2008, Vincent Scerri worked for American Capital Homes as a maintenance person. He repeatedly carried paint and paint materials to the second and third floors of a building. On one of his trips, he was carrying both a five-gallon bucket of paint and a utility belt weighing approximately ten pounds when he developed the onset of pain in his low back which radiated into his right leg.

Scerri treated this injury with conservative care, including anti-inflammatories and physical therapy. The conservative treatment did not result in resolution or improvement of his injuries, so Scerri had surgery on his back on March 3, 2010. During this surgery, the surgeon

---

[2] Appellant also erroneously challenged the BIIA's interpretation of RCW 51.08.160 in their reply brief. *See, e.g., Wilson v. Dep't of Labor and Indus.*, 6 Wn. App. 902, 496 P.2d 551 (1972). However, Appellant did not assign error to this issue, nor did Appellant raise the issue or provide supporting argument in their opening brief as required by RAP 10.3(a)(6). "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Thus, we do not further consider Appellant's challenge to the BIIA's interpretation of the statute.

found a herniated disk. The surgery failed, and the radicular pain in his low back and right extremity persisted. Scerri worked part-time after his injury, but he did not work after his first surgery in 2010. Scerri went to a different doctor, who performed a more extensive surgery again on November 3, 2010. Scerri did not improve after this second surgery, and was referred for chronic pain management and a work-hardening program. Scerri was also diagnosed with adjustment disorder with anxiety which was causally related to his occupational injury. And a contributing factor to his depressive symptoms was his chronic low back pain. Scerri died on July 11, 2015, for reasons unrelated to the industrial injury. His wife, Cindy Scerri, survived him and claimed survivor's benefits under RCW 51.32.067.

On February 16, 2016, the Department entered a permanent partial disability award for Scerri's lower back and mental health impairments. On April 26, 2016, the Department entered a decision denying the survivor's benefits claim because "[t]he cause of death was not related to the injury or disease covered under this claim and the worker was not totally permanently disabled because of the condition(s) covered under this claim." Clerk's Papers (CP) at 58. On June 10, 2016, Appellant filed a notice appealing the Department's decisions to the BIIA.

B.      BOARD OF INDUSTRIAL INSURANCE APPEALS

The BIIA heard testimony from medical professionals, vocational experts, and lay witnesses. In its Decision and Order, the BIIA found that:

2.      Vincent A. Scerri sustained an industrial injury on May 28, 2008, when he was walking up a flight of stairs while carrying a bucket of paint.

3.      The industrial injury proximately caused lumbosacral strain and displaced lumbar intervertebral disk without myelopathy. The industrial injury also proximately caused the following mental health conditions: depression, pain disorder, and adjustment disorder.

4. Mr. Scerri died on July 11, 2015, due to causes unrelated to the industrial injury.

5. Based on the entire record, there is insufficient evidence to establish a prima facie case that either of the awards for permanent partial disability should be increased.

6. As of July 11, 2015, Mr. Scerri's conditions, proximately caused by the industrial injury, were not fixed and stable, and he was in need of further and proper medical treatment.

CP at 35. The BIIA concluded that:

2. . . . Ms. Scerri failed to establish a prima facie case.

3. As of the date of his death on July 11, 2015, Mr. Scerri's conditions, proximately caused by the industrial injury, were not fixed and stable. He was, therefore, not permanently and totally disabled as a result of the industrial injury, within the meaning of RCW 51.08.160, and his surviving spouse, Cynthia Scerri, is not entitled to benefits under RCW 51.32.067.

4. . . . Ms. Scerri's appeal from the Department order dated April 25, 2016, is dismissed for failure to present a prima facie case for the relief being sought as required by RCW 51.52.050. The permanent partial disability payments ordered by the Department by that order may not be lost to Ms. Scerri. *Brakus v. Department of Labor & Indus.*, 48 Wn. 2d 218 (1956).

5. . . . [T]he Department order dated April 26, 2016, is correct and is affirmed.

CP at 10, 36.

C.    JURY TRIAL

Appellant appealed the BIIA's Decision and Order to the Pierce County Superior Court. During the jury trial, transcripts from the BIIA hearing were read to the jury.

1.    Medical Professional Testimony

H. Richard Johnson, an orthopedic surgeon, testified that Scerri was permanently and totally disabled as of the time of his death on a more-probable-than-not basis.   Johnson also

testified that at the time Scerri's death, there was no further curative treatment with regard to Scerri's low back or lower extremity functional impairment. Johnson stated that Scerri had a history of abusing alcohol and was using the alcohol to treat his pain. Scerri had diabetes and had abused alcohol before his injury and he could still work, so these factors did not affect Johnson's opinion on disability. Johnson further testified that Scerri's functional impairment rendering him unable to work on a regular continuous basis was because of the residuals of the industrial injury.

John Bassinger O'Brien, a physician assistant, testified that he was the attending physician of record for Scerri. O'Brien began treating Scerri in 2013. O'Brien's treatment of Scerri focused on the chronic pain problem. O'Brien opined that the most significant issue which would have prevented Scerri from gainful employment was uncontrolled pain as a complication of spinal conditions on the allowed claim. O'Brien was "struck by the severity of multiple manifestations on a systemic basis of Mr. Scerri's pain, including the frequently described tremulousness and for want of a better word, twerking behavior as well as involuntary vomiting." CP at 572-73.

O'Brien also testified that Scerri suffered from end-stage alcohol misuse disorder. Scerri was noncompliant with his medical treatment and self-medicated with alcohol. He was noncompliant with pain management because he was an active alcoholic. Scerri's late-stage alcoholism aggravated his pain condition and O'Brien's ability to help him with it. O'Brien was unable to establish that the pain caused the alcoholism. O'Brien's testimony proceeded as follows:

> Q:      Do you have an opinion on a more-probable-than-not basis, sir, as to whether as of the date of Mr. Scerri's death, July 11, 2015, whether he was in need of further curative medical care?
>
> A.      Yes.
>
> Q:      What is that opinion?

A:    Yes, he is. He was in need of further medical care.

Q:    Now, is that medical care curative or what is your opinion about whether the medical care that he was receiving at the time of his death was curative or not?

A:    If—if allowed treatment for depression and other psychological pain disorders—that's a difficult question to answer.

In my opinion the treatment he received for adjustment disorder, depression, and other psychological pain disorders was suboptimal, in no small part, because of his active end-stage alcoholism. Not the sole cause but a cause of diminished ability to be compliant with treatment for adjustment disorder, depression, and other psychological pain disorders.

Therefore, I'd say that in my opinion those diagnoses never evolved to the point which could be considered fixed and stable or maximum medical improvement. So I can't make an opinion—I can't express an opinion as to if they're curative because treatment was not successful in that those treatments require a compliance on the part of the patient.

Q:    What is your understanding of what medical maximum improvement means?

A:    My understand [sic] of maximum medical improvement is at the point in the trajectory of a claim where no further improvement is expected. The patient may or may not be cured, but further treatment is unlikely to result in further improvement.

Q:    What is your opinion about whether or not further treatment was likely to see improvement in Mr. Scerri's case?

A:    On a more-probable-than-not basis I would have to say that further treatment would not result in any improvement.

Q:    Do you have an opinion, on a more-probable-than-not basis, as to whether Mr. Scerri was a permanently and totally disabled worker?

A:    I do.

Q:    What is that opinion?

A:    Yes.

Q:     Why do you say that?

A:     The magnitude, severity of the pain disorder, which I diagnosed, which was a direct result of complications of his surgery for his displaced lumbar disk disorder resulted in so many manifestations, as I have described, for example, the tremulousness, the involuntary vomiting, et cetera, that I cannot envision even on a part-time basis any employer entertaining continued employment for someone who unpredictably throws up, even on his way to work.

CP at 583-85. O'Brien opined that Scerri's inability to be employed was proximately caused by the industrial injury.

Mark David Holmes, a neurologist, and David Scott Smith, an orthopedic surgeon, were both certified by the Department to conduct an independent medical examination of Scerri on February 3, 2015. Holmes testified that Scerri "would require treatment for his other medical conditions for sure, but not necessarily for the injury in 2008." CP at 757. Smith testified that there was no further treatment indicated for Scerri's industrial related condition, and therefore, that condition was "fixed and stable." CP at 796. Smith did not provide an opinion on Scerri's mental health issue. However, at the end of their report to the Department, Holmes and Smith wrote, "'[Scerri's] ability to work to a large extent will be dictated by his other unrelated medical problems.'" CP at 806-07.

2.     Vocational Expert Testimony

Barbara Berndt, a vocational rehabilitation counselor and vocational expert, testified that the Department engaged her as a vocational expert to review Scerri's case, and based on the records she reviewed, "there was a preponderance of full-time work capability." CP at 823. Berndt also testified as to Scerri's mental health issues. Scerri had an allowed condition of adjustment disorder with anxiety. This adjustment disorder was causally related to the occupational injury. Berndt

also testified that Dr. Michael Ward, a psychiatrist, who conducted an independent medical exam of Scerri in February 2015, stated in his report that the contributing factors to Scerri's depressive symptoms are multifactorial and include chronic low back pain, being unemployed, a long history of alcohol abuse, and a long history of chronic opioid use. The report stated, "it can be concluded that the failed treatment of psychotherapy, psychotropic medication, and biofeedback is likely due to a confounding factor or factors that have continued to impede Mr. Scerri's progress." CP at 837.

### 3. Lay Witness Testimony

Cindy Scerri, Scerri's widow, testified that Scerri had received treatment for alcoholism in 2004. Cindy[3] also testified that Scerri began drinking again after his injury in 2008, and was self-medicating.

### 4. Verdict and Post-Trial Motion

The jury was asked to answer the following question: "Was the Board of Industrial Insurance Appeals correct in deciding that Mr. Scerri's conditions due to his industrial injury were not fixed and stable, and he was in need of further necessary and proper medical treatment?" CP at 844. The jury answered, "Yes." CP at 844.

Appellant moved to vacate the verdict and for the court to grant a new trial, arguing that there was no substantial evidence or reasonable inference to sustain the jury's verdict. The trial court denied the motion.

Appellant appeals.

---

[3] For clarity, because Vincent Scerri and Cindy Scerri have the same last name, Cindy Scerri is referred to by her first name. No disrespect is intended.

ANALYSIS

A.  STANDARD OF REVIEW

Under the Industrial Insurance Act (IIA), we review the trial court's decision, not the BIIA's order. RCW 51.52.140; *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 296, 354 P.3d 924 (2015). We review the trial court's decision in the same way this court does other civil cases. RCW 51.52.140; *Mason v. Georgia-Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d 381, *review denied*, 174 Wn.2d 1015 (2012).

B.  SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S VERDICT

Appellant argues that the trial court erred in denying the motion to vacate the verdict and for a new trial. Appellant contends that there is no substantial evidence or reasonable inference to sustain the jury's verdict that Scerri's conditions due to his industrial injury were not fixed and stable and that he was in need of further necessary and proper medical treatment. We disagree.

1.  Legal Principles

We review a trial court's decision on a motion to vacate for an abuse of discretion. *Landon v. Home Depot*, 191 Wn. App. 635, 639, 365 P.3d 752 (2015), *review denied*, 185 Wn.2d 1030 (2016). A trial court abuses its discretion when its decision is manifestly unreasonable, or is based on untenable grounds or untenable reasons. *Id*. at 640. A decision is based on untenable grounds or untenable reasons if the trial court applies an incorrect legal standard or relies on unsupported facts. *Id*

Under CR 59(a)(7), a verdict may be vacated and a new trial granted when there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or the verdict is contrary to the law. We evaluate whether substantial evidence supports the jury's verdict.

9

*Herriman v. May*, 142 Wn. App. 226, 232, 174 P.3d 156 (2007). The evidence, and all reasonable inferences from the evidence, is viewed in the light most favorable to the nonmoving party. *Id.* Here, the nonmoving party is the Department.

Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. *Ferencak v. Dep't of Labor & Indus.*, 142 Wn. App. 713, 719–20, 175 P.3d 1109 (2008), *aff'd*, *Kustura v. Dep't of Labor & Industries*, 169 Wn.2d 81 (2010). Inconsistencies within the evidence are matters which affect weight and credibility and are exclusively for the jury to decide. *Herriman*, 142 Wn. App. at 232. The trial court has no discretion to disturb a verdict within the range of the evidence. *Id.*

RCW 51.08.160 states, "'Permanent total disability' means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation." This involves the loss of working ability due to an industrial injury or condition which is permanent, which means one that is fixed, lasting, stable, and not remediable. *Williams v. Virginia Mason Medical Center*, 75 Wn. App. 582, 586, 880 P.2d 539 (1994) (citing *Hiatt v. Dep't of Labor & Indus.*, 48 Wn.2d 843, 846, 297 P.2d 244 (1956)). And if the claimant cannot engage in any gainful employment, the permanent disability is total. *Id.* "Regardless of the cause of death, a widow of an injured workman is entitled to a pension if he dies during the period of permanent total disability resulting from the injury." *Hiatt*, 48 Wn.2d at 846.

A worker who sustains an injury and who is entitled to compensation is entitled to receive proper and necessary health care services during the period of the worker's disability from the

injury. *See* RCW 51.36.010; WAC 296-20-01002. Under the IIA, "Proper and necessary" refers to those health care services which are

> Curative or rehabilitative. Care must be of a type to cure the effects of a work-related injury or illness, or it must be rehabilitative. Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes.

WAC 296-20-01002 (subsection (2)(b) under "proper and necessary"). Maximum medical improvement occurs when no fundamental or marked change in a condition can be expected, with or without treatment. WAC 296-20-01002 (subsection (3) under "proper and necessary"). "'Maximum medical improvement' is equivalent to 'fixed and stable.'" WAC 296-20-01002 (subsection (3) under "proper and necessary").

> 2.      Trial Court Did Not Abuse Its Discretion

Here, the jury found that "Scerri's conditions due to his industrial injury were not fixed and stable, and he was in need of further necessary and proper medical treatment." CP at 844. The evidence, viewed in the light most favorable to the Department, shows that Scerri was in need of further medical care.

Berndt testified that Scerri's allowed adjustment disorder with anxiety was causally related to his occupational injury. Berndt also referenced Dr. Ward's report that reached the conclusion that Scerri's failed psychotherapy, psychotropic medication, and biofeedback was "likely due to a confounding factor or factors that have continued to impede Mr. Scerri's progress." CP at 837. Holmes and Smith both opined that Scerri's ability to return to work largely depended on Scerri's

11

"other unrelated medical problems" unrelated to the actual injury sustained in 2008. CP at 806-07.

O'Brien, Scerri's treating medical provider, testified that Scerri's mental health condition had not "evolved to the point which could be considered fixed and stable or maximum medical improvement" because of Scerri's noncompliance with treatment. CP at 584. The treatment Scerri was receiving was not successful because Scerri failed to comply with treatment due to his end-stage alcoholism. O'Brien was unable to say that the pain Scerri was experiencing caused the alcoholism. However, both Johnson and Cindy confirmed that Scerri's alcoholism was a preexisting condition.

Appellant highlights the portions of O'Brien's testimony that state "[o]n a more-probable-than-not basis I would have to say that further treatment would not result in any improvement" and that Scerri's was permanently and totally disabled. Br. of App. at 18 (boldface omitted). But, viewing the evidence and all reasonable inferences in a light most favorable to the Department, a reasonable inference from O'Brien's testimony is that further treatment would not have resulted in any improvement because of Scerri's non-compliance with treatment, not because Scerri was not in need of further necessary and proper medical treatment. Also, O'Brien's testimony that Scerri was permanently and totally disabled was not based on Scerri's capacity to perform work as required under RCW 51.08.160, but on O'Brien's assumption that no employer would "entertain[] continued employment" of someone with Scerri's symptoms. CP at 585.

Based on the evidence, a fair-minded rational person could believe that Scerri's condition due to his injury was not fixed and stable and that Scerri was in need of further necessary and proper medical treatment. Thus, the jury's verdict is supported by substantial evidence. Because

substantial evidence supports the jury's verdict, the trial court's denial of Appellant's motion to vacate was not based on untenable grounds or untenable reasons. Therefore, the trial court did not abuse its discretion in denying Appellant's motion to vacate and for a new trial.

We affirm the trial court's denial of the motion to vacate verdict and for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

 

_____
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.